SNELSON *v.* THE STATE, on the relation of the BOARD OF COMMISSIONERS OF MADISON COUNTY.

*S.* was allowed and paid by the board of commissioners two and one half per cent. on the county orders redeemed by him as county treasurer, in the belief, on the part of the board, that under R. S. 1843, § 90, p. 195, he was entitled to such allowance. Suit by the board to recover back the amount thus paid.

*Held,* that the treasurer was not entitled to the per cent. named, for redeeming county orders with the revenue collected on the tax duplicate.

*Held,* also, that money voluntarily paid under a mistake of law, without fraud or mistake of fact, can not, in ordinary cases between individuals, be recovered back.

*Held,* also, that where the board have jurisdiction to decide at all, the decision, whether right or wrong, can not be regarded as void; but is binding, unless appealed from, or avoided in some legitimate way.

*Held,* also, that as the acts of the board were not void, but within the general scope of their authority, the money allowed and paid to the treasurer, under a mere mistake of law, as to the liability of the county, can not be recovered back.

| 16 | 29 |
| 130 | 413 |
| 130 | 520 |
| 16 | 29 |
| 131 | 334 |
| 132 | 251 |
| 16 | 29 |
| 144 | 596 |
| 144 | 598 |
| 16 | 29 |
| 152 | 576 |
| 16 | 29 |
| 155 | 389 |
| 16 | 29 |
| f169 | 369 |

APPEAL from the *Madison* Circuit Court.

WORDEN, J.—This was an action by the appellee against the appellants, upon the official bond of *Snelson*, as treasurer of *Madison* county. Trial by the Court; finding and judgment for the plaintiff. Proper steps were taken to present the questions involved to this Court.

The facts out of which the supposed cause of action arose are as follows:

In 1850 *Snelson* was elected treasurer of the county of *Madison*, and gave the official bond in suit, and entered upon the duties of his office. At the *June* session of the board of commissioners of the county for the year 1851, *Snelson*, in his annual report to the board, claimed as fees allowed him by law, for redeeming county orders, at the rate of two and a half per cent., the sum of $142 and 95 cents. At the *June* session of the board for the year 1852, *Snelson*, in his report, made the like claim for redeeming county orders during the preceding year, for the sum of $195 and 93 cents. In the year 1853 the like claim was made by the treasurer for the sum of $355. These sums were respectively allowed to

May Term,
1861.

SNELSON
v.
THE STATE.

*Snelson* by the board of commissioners, and paid to him; and this suit was brought to recover them back, with the interest thereon. These sums were allowed to the treasurer by the commissioners, and paid to him, under the belief, on the part of the board (we copy from the bill of exceptions), "that they were authorized by law, to wit: R. S. 1843, § 90, p. 195, to allow to said *Snelson,* as treasurer as aforesaid, two and one half per cent. on the amount of county orders redeemed by him as such treasurer." It appears that the funds provided for the redemption of county orders, during the years named, were the funds collected on the tax duplicate for the said years respectively. Upon the money being demanded of *Snelson,* before the commencement of this suit, he refused to pay, remarking that the commissioners had allowed it to him, and that it had been received by him in good faith, supposing and believing that the law allowed it to him, and that he would not refund until the law compelled him to. There is no pretense that more was allowed than the specified per centum on the county orders actually redeemed by the treasurer. The plaintiff recovered the several amounts so allowed, and paid to *Snelson,* together with the interest thereon.

The question arises whether, on these facts, the action can be maintained.

The provisions of the statute of 1843, in respect to the legality of the allowance in question, are perhaps somewhat ambiguous; but it was settled by this Court in the case of *Woollen* v. *The Board of Commissioners of Jefferson County,* 4 Ind. 331, that the treasurer was not entitled to the specified per centum for redeeming county orders, where redeemed with the revenue collected on the tax duplicate, the Court remarking: "We do not consider it very clear upon the language of those sections, and hence must endeavor, if possible, to ascertain the intention of the Legislature from other legitimate sources, to aid us in resolving the doubt left by their language." The case above mentioned settles the proposition that the treasurer was not legally entitled to the per centum thus paid him for redeeming county orders; but while it does this, it also shows that the statutes were of

doubtful construction in the opinion of this Court, and tends to show, what otherwise sufficiently appears, that the commissioners and the treasurer were acting in good faith, and were honestly mistaken upon a doubtful question of law.

The money, to recover back which this suit is brought, was voluntarily paid, upon a mistake of law, and without fraud or mistake of fact; and in ordinary cases, in transactions between individuals, money thus paid can not be recovered back. Many authorities might be cited upon this point, a few of which are the following. *Downs* v. *Donnelly*, 5 Ind. 496; *Supervisors of Onondaga* v. *Briggs*, 2 Denio, 26; *The New York and Harlem Railroad Co.* v. *Marsh*, 12 N. Y. R. 308; Bateman on Commercial Law, § 15.

If this principle is applicable to the case at bar, it is decisive against the recovery, and nothing further is necessary to be said or considered, in order to a determination of the cause. But it is insisted that as the allowance and payment by the board of commissioners were not authorized by law, their acts in the premises were without authority and beyond their jurisdiction, and consequently not binding upon the county. This makes it necessary for us to determine whether the acts of the commissioners in the premises were within the scope of their authority, or otherwise. At the time when the first two allowances were made, the Statutes of 1843 were in force, but the Revised Statutes of 1852 had taken effect when the last allowance was made. Perhaps, however, there is no material difference in the statutes, in respect to the powers conferred upon the board of commissioners.

The board of commissioners of a county is a body politic and corporate, and as such may sue and be sued, and transact all business on behalf of their respective counties that may be assigned to them from time to time by law. R. S. 1843, § 3, p. 181; 1 R. S. 1852, §§ 5–13, p. 225. The only mode by which a county can act, (generally at least, if not in all cases,) is through the board of commissioners. Indeed, in legal contemplation, the board of commissioners is the county. *The State* v. *Clark*, 4 Ind. 315. Among the powers especially conferred upon the board, are the following :

"To allow all accounts chargeable against such county, not

otherwise provided for, and to direct the raising of such sums as may be necessary to defray all county expenses. To audit the accounts of all officers having the care, management, collection or disbursement of any money belonging to the county, or appropriated for its benefit." R. S. 1843, § 14, p. 183; 1 R. S. 1852, § 13, p. 227. The boards of commissioners may make allowances in their discretion. 1 R. S. 1852, § 7, p. 101.

Under these statutory provisions, it is clear enough that the allowances made to *Snelson* by the board were within the general scope of the authority conferred upon them. The board were, in terms, authorized to allow all accounts chargeable against the county. But it is argued that as the claim was not chargeable against the county, the allowance was not within the authority conferred. But whose province and duty was it to judge whether the accounts were chargeable against the county? Clearly that of the board. If they decided that question wrongly, they committed an error of judgment, but did not usurp an unconferred jurisdiction. If the account was properly chargeable against the county, it is clear that the action of the board would be conclusive, unless appealed from. Now the argument, that if the account were not chargeable against the county, the action of the board is a nullity for want of jurisdiction, proves too much. It proves that when the board decides correctly upon the liability of the county, the decision is conclusive; but when it errs in that respect, its decision is a nullity, and not merely erroneous: that the board have jurisdiction to decide right, but no jurisdiction to decide wrong. We suppose that where the board have jurisdiction to decide at all, the decision, whether right or wrong, can not be regarded as void, but is binding, unless appealed from or avoided in some legitimate mode. The principle contended for would nullify many of the decisions of perhaps every Court in the State. Courts are established for the purpose of administering justice, and it is their duty, so far as they can discover the truth, to decide right. But the power to decide at all, necessarily carries with it the power to decide wrong as well as right. In the present imperfect state of human knowledge, a power to hear and

determine, necessarily carries with it a power which makes the determination obligatory, without any reference to the question whether it was right or wrong. If this were not so, the judgment or determination of any Court would be of no particular value. It might be attacked or avoided at pleasure, upon the ground that the Court or judge had committed an error.

We are of opinion that the acts of the board of commissioners were not void, but within the general scope of their authority, and that the money having been allowed and paid upon a mere mistake of law as to the liability of the county, it can not be recovered back. In this conclusion we are supported by a decision of the Supreme Court of the State of *New York*, directly in point. *Supervisors of Onondaga* v. *Briggs, supra.*

That was an action by the supervisors (whose powers were very similar to those conferred upon our board of commissioners) against *Briggs*, to recover back certain moneys which had been audited and allowed to him by the board of supervisors, upon the ground that the claims thus allowed and paid were not due to him from the county. *Bronson*, J., in delivering the opinion of the Court, proceeds as follows: "The defendant presented his accounts from time to time to the board of supervisors, which board has power 'to examine, settle and allow' all accounts chargeable against the county, and to raise money to defray the same; and the board from time to time examined, settled, allowed and paid the accounts. These acts conclude the plaintiffs from maintaining this action upon two grounds: first, as adjudications of the matter made by a tribunal duly constituted for that purpose, and having ample authority to decide; and second, as voluntary payments, without fraud, and with full knowledge of the facts. Either ground is a complete answer to an action to recover back the money. It is a monstrous proposition to say, that all the accounts which have been audited and settled by boards of supervisors of this State can be re-opened and litigated at the pleasure of either party; and if one party can do it, the other can do it also. If the determination does not bind the party that makes it, clearly the other party can

May Term,
1861.

CHARLESTON,
&c. TURN-
PIKE CO.
v.
WILLEY.

not be bound. But upon the plainest principles it is conclusive upon both. And then, in addition, there was a voluntary payment of the money. There will never be an end of legal strife if an action will now lie to recover it back."

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded, &c.

*John Davis,* for the appellant.

*J. S. Buckles,* for the appellee.