*W. R. Pierce* and *H. D. Thompson,* for the appellants.

———————————

HALBERT *et al. v.* THE STATE *ex rel.* BOARD OF COMMISSIONERS OF MARTIN COUNTY.

<div style="float:right">22   125<br>18 8US171</div>

COUNTY TREASURER—DUTY OF—BREACH OF HIS BOND.—Under sections 2, 3, and 13, 2 G. & H. p. 640, and sections 123, 125, and 127, 1 G. & H. p. 68, it is the duty of a county treasurer to pay over the funds in his hands according to law, which may be upon orders drawn upon him by the auditor, or to his successor in office, and a failure to make such payment constitutes a breach of his bond, conditioned for the faithful performance of his duties.

PUBLIC OFFICER—LIABILITY OF FOR MONEYS.—A public officer who is required to give bond for the proper payment of money that may come into his hands, as such officer, is not a mere bailee of the money, exonerated by the exercise of ordinary care and diligence, but his liability is fixed by his bond, and the fact that the money

Halbert et al. *v.* The State ex rel. The Board, &c., of Martin Co.

was stolen from him without his fault, does not release him from his obligation to make such payment.

COUNTY TREASURER—BOARD OF COMMISSIONERS HAVE NO POWER OVER, TO DIRECT WHERE FUNDS OF STATE AND COUNTY SHALL BE KEPT.—A county treasurer is. an officer who acts on his own responsibility, and independently of the Board of Commissioners of the county, so far as the keeping of the funds of the State and county is concerned. He is the proper custodian of the funds, and the Board of Commissioners have no legal authority to direct him where, or in what manner, the funds shall be kept.

HANNA, J., dissenting.

APPEAL from the *Martin* Circuit Court.

WORDEN, J.—This was an action against *Halbert* and his sureties on his official bond as treasurer of *Martin* county. The condition of the bond was that *Halbert* should "faithfully and impartially discharge his duties as treasurer of *Martin* county, and pay over all moneys according to law that might come into his hands as such treasurer."

There were three breaches assigned.

1st. That *Halbert* received, while in office, 3000 dollars belonging to the common school fund, which he failed to pay over.

2d. That he received 3000 dollars on account of township taxes, which he failed to pay over.

3d. That he received funds belonging to said county, arising from various sources, to the amount of 3000 dollars, which he failed to pay over.

The general denial was filed, with an agreement that all matters of defence, and of reply thereto, might be given in evidence in the same manner as if pleaded.

The cause was submitted to the Court for trial on the following agreed statement of the facts:

"That the defendant, *Thomas Halbert*, was, at the *October* election in the year A. D. 1859, elected treasurer of the county

Halbert et al. *v.* The State ex rel. The Board, &c., of Martin Co.

of *Martin* aforesaid, for the term of two years from the 5th day of *November*, 1859. The said *Thomas Halbert* as principal, and the other defendants as sureties, executed a bond to the State of *Indiana*, conditioned for the faithful performance of said *Halbert's* duties as treasurer aforesaid, as alleged in the plaintiff's complaint, which bond on the day and year last aforesaid, was approved by the Board of Commissioners aforesaid, and said *Halbert* then and there entered upon the duties of said office, and continued therein until his successor was duly elected and qualified; that there came into his hands during his said term of office as such treasurer as aforesaid, from divers sources, the sum of 2186 dollars and 26 cents, which he did not pay over to the persons authorized by law to recieve the same, or to his successor in office; that at the *December* term, A. D. 1859, of the Board of Commissioners of said county, to wit: on the 8th day of *December*, 1859, the following order was made by said Board and entered on their record, to wit: 'Ordered, that *James C. O'Brien* be allowed the sum of 172 dollars for a safe furnished the treasurer's office;' that at the *March* term, A. D. 1861, of said Board of Commissioners the following order was made by said Board and entered on their record, to wit: 'Comes now *Thomas Halbert*, treasurer of *Martin* county, and files his written statement, to wit: That there was a clerical irregularity and omission in a certain order of this Court, made at the *December* term, 1859, in the matter of the purchase of the safe, for the safe-keeping of the funds, &c., of the treasury, and other orders in the premises, and asks that the record thereof be corrected by making an entry now for then of the several orders in the premises, and after an examination of said orders as recorded at said *December* term, 1859, and hearing evidence therein, the Board being fully advised in the premises, it is ordered that the following entry be made now for then, to wit: It appearing to the satisfaction

of the Board that the funds belonging to the county treasury are constantly in danger of loss by robbers, fire, or other casualities; it is therefore ordered by the Board that a safe be purchased for the use of the treasurer of said county; and now comes *James C. O'Brien* and proposes to sell to said Commissioners, for the uses aforesaid, a certain safe, now exhibited to them, and said safe being deemed sufficient by said Board, is now purchased in open session of said *O'Brien* for the uses and purposes aforesaid, and said treasurer is now ordered and directed by the Board to deposit and keep the moneys, orders, and valuable papers and books of the treasury of said county, in the safe aforesaid; and that said *O'Brien* be allowed the sum of 172 dollars therefor;' that at the *December* term, 1859, and from thence hitherto, the office of treasurer of said county, as provided by said Commissioners, was kept in a room on the first floor of the court house in said county, which room had one door of wood, fastened by an ordinary lock, and two windows with loose wooden shutters on the inside, which were fastened by cross bars across the middle of the shutter, no other office having been provided for said treasurer by said Board; that from said *December* term, 1859, until the 12th day of *December*, 1860, said *Halbert*, as treasurer aforesaid, kept and deposited the moneys, papers, and books, belonging to the treasury of said county, in said safe, which was kept properly locked and situated in said room; that on the evening of said 12th day of *December*, 1860, at the close of business hours, the said *Halbert*, being treasurer as aforesaid, deposited in said safe the sum of 1958 dollars and 58 cents, being money in his hands received by him as treasurer aforesaid; that said *Halbert*, upon depositing said money on said evening in said safe, locked the same properly and removed the key, fastened the shutters of the windows, locked the door of said office, and took the keys of said safe and office doors, home with

Halbert et al. *v.* The State ex rel. The Board, &c., of Martin Co.

him; that some time during the night of said 12th day of *December*, 1860, said office, without the knowledge or consent of said *Halbert*, was burglariously and feloniously broken open and entered by some person or persons unknown, and said safe blown open by means of powder, and the moneys therein aforesaid deposited, feloniously stolen and carried away by said unknown person or persons, and no portion of said moneys was ever thereafter recovered by said *Halbert*. Now it is agreed that if, upon the foregoing facts, the Court is of the opinion that said *Halbert* is liable to pay the moneys so feloniously stolen as aforesaid, the Court shall find in favor of the plaintiff in the sum of 2186 dollars and 26 cents, and the interest and penalty prescribed by law; if the Court is of the opinion that *Halbert* is not liable to pay said stolen moneys, the Court shall find for the plaintiff in the sum of 227 dollars and 68 cents; interest on the amount found to be due to be computed from *November* 15th, 1861."

The Court found for the plaintiff the larger amount specified in the agreement, with interest and penalty; and having overruled a motion for a new trial, rendered judgment.

The defendants appeal.

It is not claimed that any part of the moneys stolen was the money of the State, and the question presented by the record is, whether the defendants are liable on the bond for the moneys so stolen, assuming them to have been moneys received by the treasurer for county purposes.

The law provides that all official bonds "shall be obligatory to the State upon the principal and sureties, for the faithful discharge of all duties required of such officer by any law, then or subsequently in force, for the use of any person injured by any breach of the condition thereof." 1 G. & H. p. 164, § 10.

The bond in suit, we have seen, was conditioned not only for the faithful performance of his duties by *Halbert*, as treas-

urer, but for the payment over according to law of all money that might come into his hands as such treasurer.

It is objected that the latter branch of the condition was unauthorized by law, and therefore of no effect. But if the condition for the faithful performance of his duties includes the paying over according to law, of all moneys that might come into his hands as such treasurer, nothing is added to the legal effect of the bond by the latter branch of the condition. An examination of the various statutes bearing on the question, shows clearly enough that one of the duties of a county treasurer is to pay over according to law all moneys that come into his hands as such treasurer; hence we shall consider the case as if the bond had been conditioned simply for the faithful performance of the duties of the officer.

The following sections are found in the act in relation to county treasurers. 1 G. & H. 640:

"SEC. 2. He" (the treasurer) "shall receive all moneys coming to the county, and disburse the same on the proper orders issued and attested by the auditor."

"SEC. 3. He shall give to any person paying money to him as treasurer, a receipt therefor, which receipt, except it be for taxes, shall be deposited by such person with the auditor, who shall give him a quietus for the same."

"SEC. 13. The treasurer shall annually make complete settlement with the Board of Commissioners, at the regular *June* term thereof, and shall at the expiration of his term deliver to his successor all public money, books, and papers in his possession."

In the act on the subject of the assessment of taxes, 1 G. & H. p. 68, are found the following provisions:

SEC. 123. Fifth clause. "After deducting the amount of taxes so returned delinquent, and the collection fees allowed the treasurer, from the several taxes charged on the dupli-

cate, in a just and ratable proportion, the treasurer shall be held liable for the balance."

"SEC. 125. The revenue collected for county, road, and other purposes, shall be paid over, and settlement therefor made, as may be provided in the several acts and sections relating thereto, and to the duties of county auditors and treasurers."

"SEC. 127. If any such county treasurer shall refuse or neglect to pay over all moneys, as provided for herein, he and his sureties shall be liable for the full amount which he should have paid over, together with interest and ten per cent. damages."

By these various provisions, it is clearly seen that it is the duty of a county treasurer to pay over the funds in his hands according to law, which may be upon orders drawn upon him by the auditor, or to his successor in office; and a failure to make such payment constitutes a breach in his bond, conditioned for the faithful performance of his duties.

Does the fact that the money was stolen without fault on his part relieve him from the necessity of discharging the obligation imposed upon him by his bond? Leaving out of view the action of the Board of Commissioners in procuring a safe and ordering the treasurer to keep the money therein, the question is abundantly settled by authority. It is well established that a public officer who is required to give bond for the proper payment of moneys that may come into his hands as such officer, is not a mere bailee of the money, exonerated by the exercise of ordinary care and diligence; but that his liability is fixed by his bond, and that the fact that the money was stolen from him without his fault, does not release him from his obligation to make such payment. *Muzzy* v. *Shattuck*, 1 Denio 233; *Inhabitants of Hancock* v. *Hazzard and Another*, 12 Cush. 112; *The United States* v. *Prescott*, 3 How. 578; *Commonwealth* v. *Conely*, 3 Penn. S. R.

372; *The State of Ohio* v. *Harper et al.*, 6 Ohio S. R. 607. In the latter case the Court say: "By accepting the office the treasurer assumes upon himself the duty of receiving and safely keeping the public money, and of paying it out according to law. His bond is a contract that he will not fail, upon any account, to do these acts. It is, in effect, an insurance against the delinquencies of himself, and against the fault and wrongs of others, in regard to the trust placed in his hands. He voluntarily takes upon himself the risks incident to the office, and to the custody and disbursement of the money. Hence it is not a sufficient answer, when sued for a balance found to have passed into his hands, to say that it was stolen from him; for even if the larceny be shown to have been without his fault, still by the terms of the law, and of his contract, he is bound to make good any deficiency which may occur in the funds which came under his charge." The language of the Court in the case cited from Cushing is as follows: "A collector of taxes, by accepting the office, takes the risk of the safe-keeping of the money he has actually received. His obligation is not regulated by the law of bailments, and the cases cited to that effect are inapplicable. He is a debtor, an accountant, bound to account for and pay over the money he has collected. The loss of his money, therefore, by theft or otherwise, is no excuse for non-performance; this is founded on the nature of his contract, and considerations of public policy."

We are aware that, in the case of *The Supervisors of the County of Albany* v. *Dorr et al.*, 25 Wend. 440, a different doctrine was held, but that case was earlier than any of those above cited, and it is overruled substantially, if not expressly, by them.

Does the fact that the Board of Commissioners procured a safe, and ordered the treasurer to keep the funds therein, release the treasurer from his obligation to pay over the money,

Halbert et al. *v.* The State ex rel. The Board, &c., of Martin Co.

it having been stolen? This depends upon the power of the Board of Commissioners to make the order in question; for if the Board had no power to make the order, it was a nullity, and the treasurer was not bound to obey it, nor does it furnish him any legal ground of discharge from his obligation.

We take it to be clear that a county treasurer is an officer who acts upon his own responsibility, and independently of the Board of Commissioners of the county, so far as the keeping of the funds of the State and county is concerned. He is the proper custodian of the funds, and we are aware of no law which authorizes the Board of Commissioners to direct how, where, or in what manner, the funds shall be kept.

The following provisions of the act for the organization of County Boards, (1 G. & H. p. 247) are cited by counsel for the appellants to show that the Board had power to make the order in question:

"Sec. 13. Such Commissioners in their respective counties, shall have power at their meetings: 1. To make orders respecting the property of the county in conformity to law, to sell the public grounds of the county upon which the public buildings are situated, and to purchase in lieu thereof, in the name of the county, other grounds in the county seat, on which such buildings shall be erected; to purchase other lands for the enlargement of the public square, and to take care of and preserve such property."

"Sec. 16. Such Commissioners shall cause a court-house, jail, and public offices for the clerk, recorder, treasurer, and auditor, to be erected and furnished, where the same has not been done, and shall keep all the public buildings of the county in repair, and such offices, if practicable, shall be made fire proof, and shall be occupied by such officers respectively."

Also section 7 of the act in relation to county treasurers. 1 G. & H. p. 641: "He shall at all times keep his books and office subject to the inspection and examination of the Board of County Commissioners, and shall exhibit the money in his office to such Board at least once a year."

We do not think any of the above provisions give the Board power to direct the treasurer how, or where, he shall keep the funds.

If they can make an imperative order on him to keep them in a safe, they can make such an order that he deposit them in a favorite bank, or place them elsewhere, as their fancy or caprice may dictate; indeed, if they can legally require him to keep the money in a safe, and thereby take from him the necessity of exercising his own discretion and prudence in the matter, and relieve him also from responsibility, they might require him to deliver it to themselves, and become themselves the custodians thereof.

As the Board could not make a binding order on the treasurer to keep the funds in the safe, it was optional with him to keep them there or elsewhere; and by placing them there, he took upon himself the risk of their safety, as effectually as if no such order had ever been made. The Board could not, by an order which they had no authority to make, requiring the treasurer to keep the funds in a particular place, bind the county and release the treasurer from liability. That an unauthorized act of the Board of Commissioners is void, is a proposition that needs the citation of no authorities in its support. The case of *Conner v. The State,* 4 Blackf. 241, however, is so analagous to the present, that it will be proper here to notice it. There a collector and his sureties were sued on his bond, for failing to collect and pay over the county revenue for the year 1832. The sureties pleaded that the Board of Commissioners of the county, at their session of *January,* 1833, and on the first Monday of that month,

the time at which the tax mentioned became due and payable to the county, without the consent of the sureties, made and entered an order, by which they gave further time to the collector until the first *Monday* of *March* next thereafter, to pay the revenue for 1852; that at the time when the order was made, the collector was solvent and able to pay, but that he had since become insolvent, &c. But the Court say: "The powers of the Board of Commissioners are also fixed and designated by law. Among them is not the right to interfere with, or in any way affect, the course marked out for the collector or treasurer. That Board can neither abridge nor enlarge the duties or liabilities of those officers. The order giving further time in which to pay the revenue was therefore wholly inoperative."

For these reasons the majority of the Court are of opinion that the judgment below should be affirmed.

HANNA, J.—From the conclusion of the Court, upon the record presented, I must respectfully dissent. So far as it is necessary to notice any difference of opinion between my brother judges and myself, it appears to rest, in the case at bar, solely upon our respective views in regard to the relative rights and positions of the Board of County Commissioners, and the county treasurer, towards the county funds, revenues and moneys.

By this decision, it would seem that the county treasurer is to be regarded as independent of the control, and even direction, of the county board; whilst I think their relative statutory rights and duties are such that he can shield himself behind their orders and action in this case.

It has been decided by this Court that, in view of the duties and organization of the Board of Commissioners of a county, such board has control to a great degree, of the finances of the county. *The Board, &c.* v. *Saunders,* 17 Ind. 437. And

are the guardians of the county treasury. *The Board, &c.* v. *Chitwood*, 8 Ind. 507.

It is also true that under our statutes the treasurer in each county is, not only to collect such taxes as said board may levy, but he likewise acts as the keeper of said funds, and as a kind of disbursing agent in paying out the same in pursuance of warrants, or orders, drawn upon him. His duties are tolerably clearly defined by statutes. So far as we are informed, the funds stolen were county funds and came into this treasurer's hands in the regular course of business, and were such as it would have been his duty to disburse upon proper orders made by said board. By law it was the duty of the board to provide and furnish an office for said treasurer. This they did. But they did not stop there, but made an order that he should keep the funds, &c., in said office in the safe so provided. The treasurer obeyed that order, and a loss ensued. The question is whether this order, and the act of the treasurer in obeying it, is a defence to him against the consequences which resulted. The appellants say it is. The appellee that it is not, on the ground that he was not bound to obey the order, because the board transcended their powers in making it. It may be possible that the positions and duties of the board and of the treasurer are relatively such towards the finances of the county, that this proposition of the appellees does not express their respective legal rights. It may be, the treasurer was not bound to obey the order made by the board, and yet, having obeyed it, he can defend under it. For instance, it has been held, that an improper and illegal allowance made by a board to a treasurer, would enable him to defend against a suit for the recovery of such amount. *Snelson* v. *The State, &c.*, 16 Ind. 29. Upon what principle can this decision be sustained? On the ground, we suppose, that the board has the general power to make allowances payable out of the treasury. That would be beyond

doubt as to cases in which the claim is legal. But where it is illegal how can it be sustained, if the right of the board to control the funds of the county is denied? We suppose such action can then be sustained only on the ground that the board has jurisdiction of the question of allowances and acted within the general scope of the authority conferred. Perhaps there might be instances in which that action would be so palpably outside of authority as to be void. This we need not determine in this case.

By the 16th section of an act organizing county boards, it is, among other things, made their duty to cause the erection of public offices and furnishing thereof, and that the same shall be fire proof if practicable, and such offices shall be occupied by the said officers—the treasurer is mentioned. 1 G. & H. 250. By the acts of 1853, p. 136, 1 G. & H. p. 641, the duty of the treasurer to keep his office in fire proof buildings, where the same have been provided, is reasserted, and it is declared to be a finable offence if he fails to do so, &c.,

In this case there was not a literal compliance, by the board, with the requirements of the statute in erecting a fire proof office; but it is shown by the agreement that they supposed they were furnishing a fire proof and burglar proof safe in which to keep the funds of the county. Of course, whether it was of that character was a question of fact—not of law. The law would have fixed the duty of the treasurer as to the place of keeping his office, if fire proof buildings had been erected. As this had not been done, the board, we suppose, in view of that fact, and of the kind of safe purchased, made the order set forth to regulate the acts of the treasurer.

The board is a body corporate and politic and have such duties, rights and powers as are incident to corporations, and not inconsistent with the act organizing said board. 1 G. & H. 248. The powers of the board as a corporation are such

as are incident to corporations—under this provision—not such as are specially conferred by name on said corporations by statutes. It is true, that it has been often held that the said board is an inferior Court of special and limited statutory jurisdiction; that is, its judicial powers are such as the statute specially points out, but the same language does not appear to be used in reference to its corporate powers. Indeed it has been held that in legal contemplation said board is the county. *The State* v. *Clark*, 4 Ind. 316. This was said in reference to the property of the county and such as was entrusted to the management of the county. The board then is a corporation with certain limited judicial powers, and with the ample corporate powers alluded to. The auditor is the clerk of the board or corporation, keeps its records, and, among other duties, draws orders on the treasurer as directed by the board; the treasurer collects, receives, keeps and disburses the funds belonging to, or entrusted to the care of, said corporation. His office, books and money are subject to the inspection of said board, and he may be removed by said board from office. 1 G. & H. p. 641–2.

In view of the general corporate powers of the board over the funds of the county, and looking to the clearly defined interest of said board to control the treasurer as to the manner and place of keeping said funds, as evidenced by the order fully entered after the loss, and the provision which was made whereby the safety of the funds was supposed to have been provided for, I am of opinion that a compliance by the treasurer with the directions of the board, in that behalf, furnished him with a defence to an action because of the loss which was the result of such order. I do not go beyond the case, as presented at bar, in the application of the power of the board to interfere with or direct the treasurer as to the mode of keeping the public moneys of the county. I do not question nor look to the legal rights or liability of the treas-

urer where the funds have been stolen, in the absence of any order or action of the Board of Commissioners in regard to said funds, or of an order less pointed and effective than the one in question.

It was suggested in argument that a conclusion different from that arrived at by the Court in this case would jeopardize the public interest. I can not see the matter in that light, for the simple reason that this case stands upon its own state of facts, which may never occur again in another case.

*Per Curiam.*—The judgment below is affirmed, with costs and one-quarter of one per cent. damages.

*W. E. Niblack, N. F. Malotte* and *Thomas R. Cobb,* for the appellants.

*John Baker,* for the appellee.