## KING v. THE BOARD OF COMMISSIONERS OF FOUNTAIN COUNTY.

COUNTY TREASURER.—*Fees.*—*Statute Construed.*—During the war of the rebellion, the county of Fountain issued county orders to a large amount to pay bounties to volunteers for the army of the United States, all of which were afterward paid out of funds raised by taxation. The treasurer demanded two and one-half per cent. on the orders so paid, under sec. 1 of the act of June 4th, 1861, 3 Ind. Stat. 247.

*Held*, that as the money with which said orders were paid was the product of taxation, the treasurer was not entitled to any commission for paying

it out. His compensation was limited to five cents for each order redeemed by him.

From the Marion Civil Circuit Court.

*D. Turpie, H. D. Pierce, J. W. Harper,* and *S. J. Woods,* for appellant.

*Tipton & Miller,* for appellee.

BUSKIRK, C. J.—King, the appellant, as it appears from the evidence, was, on the 12th day of October, 1862, elected treasurer of Fountain county, and served as such until the 25th day of August, 1867. During the term of his office, he received and disbursed as treasurer the sum of two hundred and fifty thousand eight hundred and forty dollars and fifty-four cents, on account of a fund called the County Volunteer Fund of said county, being moneys appropriated by the board of commissioners in aid of volunteering for the army of the United States, during the war of the rebellion.

The case was tried before the Hon. Judge Howland, of the Marion Circuit Court, and a finding and judgment rendered for the defendant. A motion for a new trial was made, for the reason that the finding was contrary to law and the evidence. The motion for a new trial was overruled, to which ruling the appellant at the time excepted.

The error assigned calls in question the action of the court in overruling the motion for a new trial.

The only question involved in this case is the construction to be given to the ninth clause of the first section of the act of June 4th, 1861, prescribing the fees of county treasurers and other officers. The clause of the act referred to reads as follows: " County treasurer's fees : Two and one-half per cent. on all moneys received and paid out other than tax and school funds : Provided, however, that no percentage whatever shall be allowed the treasurer for money paid out on the redemption of county orders, but the treasurer shall be allowed five cents for each order redeemed and registered by him." 3 Ind. Stat. 247.

The above act was in force during the appellant's incumbency

of the office, and it is conceded that if he recover at all it must be by force of the section cited.

The testimony of the appellant and David Webb, county auditor, will fully explain the nature and character of the county orders redeemed, and the services rendered by the appellant.

Mr. King, the appellant, testified as follows : " I had nothing to do with the draft fund as treasurer of the county,.except to redeem the orders when presented, except the sum of about thirteen thousand dollars paid into the treasury by citizens of Davis township; this money I think I receipted for as treasurer; paid it out on order of the auditor ; I retained two and one-half per cent. for receiving and disbursing the same; no other moneys came into my hands from any source on account of said bonds, except as I collected the same from tax duplicate of the county. All moneys paid out by me in redemption of said bonds or orders came from the tax duplicate of the county; I did not negotiate any of the orders, and none were sold by me ; the only thing I had to do was to redeem the same. For all moneys disbursed by me in payment of said bonds or orders, I received the per cent. allowed by law for collection of same as tax, and on each of said bonds or orders redeemed by me, I received the sum of five cents, as the fee allowed by law for each order redeemed and registered by me. There were no funds placed in my hands to redeem said orders, by the commissioners, other than what came from tax on the duplicate."

David Webb, witness for the defendant, testified as follows: " I was auditor of Fountain county, Indiana, from 1864 to 1867, inclusive; during this time all of what is known as the bounty orders were issued; I, as auditor, issued warrants or orders on the county treasury to such persons as were entitled to them, in pursuance of the order of the board of commissioners; all of the warrants or orders issued by me, as auditor, were delivered to the parties entitled to them, or to certain individuals who were designated by the board of commissioners as agents to receive the orders and deliver them to the proper persons

entitled to have them; none of these orders were delivered to James W. King, as treasurer of the county, to be negotiated or to be delivered to other parties; James W. King, as treasurer, had nothing to do with the orders, except to redeem the same out of the county treasury when they were presented for payment, if money was on hand therefor; all of the orders redeemed by Mr. King, as treasurer, were redeemed in the payment of taxes, and with moneys derived from the collection of taxes, assessed on the tax duplicate of the county for that purpose, which money was collected in the usual way of collecting the county revenue; the bounty warrants or orders were issued in the ordinary form of county orders or warrants, except they were made payable at a future date, and were drawn with interest from date; they also had printed on them the designating words, ' expenses of volunteers.' "
One of which orders was given in evidence, and read as follows:

" 25.00.        EXPENSES OF VOLUNTEERS.        No. 1,301.
         " AUDITOR'S OFFICE, COVINGTON, IND., }
                    " February 20th, 1866. }

" Treasurer of Fountain County, Indiana, pay to Jasper Hayden, or bearer, on or before March 25th, 1867, with interest from November 7th, 1864, twenty-five dollars and —— cents, for amount paid for enlisting volunteers on quota of Richland township, as allowed by the board of commissioners of said county, at their special session, October 10th, 1864.
                              " DAVID WEBB,
                    "Auditor of Fountain County."

The question presented is one of first impression. There has been no judicial construction of the clause of the statute in question. The positions assumed by counsel will appear from the following extracts from their briefs.

Counsel for appellant say: " It is very clear, under this clause, that there are certain moneys, upon the receipt and disbursement of which the treasurer is entitled to two and a half per cent. commission. What are those moneys? This

question is answered by the words of the clause following the particle ' other.'

" He is entitled to two and a half per cent. commission upon all moneys ' received and paid out,' except tax and school funds. The commission is earned by the receipt and payment out of all moneys other than tax and school funds. The commission is not earned by the receipt of such moneys as come within the exceptional clause ; it is not earned by the paying out of any such moneys, but by the two acts of receipt and disbursement. The treasurer is entitled to the commissions ; consequently, to deprive the treasurer of these commissions, it is manifest that the moneys upon which he claims these commissions must not only be received as taxes or school fund, but paid out as taxes or school fund.

" ' Two and one-half per cent. on all moneys received and paid out, other than tax and school funds,' is the precise language of the statute. Much the largest portion of every county treasurer's funds, in fact the whole of it, is received as taxes or school fund.

" The amount chargeable upon the current and delinquent duplicate makes up the whole ordinary county revenue, and this amount is received as taxes, and for the most part paid out as taxes, to the state, county, and township officers. And so with regard to the special revenue of the county upon interest, trust funds, sale of school lands, show licenses, etc. Those special funds are received altogether as school funds, and usually paid out as school funds to the proper officers. But occasionally moneys are received by a county treasurer as taxes or as school funds, but are not paid out as such, but go to a private person, a creditor of the county. In such an instance, we think it is clear that the money, though it is received as tax or school fund, is not paid out as such, and comes clearly within the provision of the clause above cited, being money received and paid out other than tax and school fund. If this be not the meaning of the clause, what purpose has it at all ?

" All moneys go into the treasury as taxes or school funds, but all money is not paid out as tax or school funds, although a very great portion of it is.

" The money paid to the state treasurer, to the township trustees, to the supervisors of roads, etc., is money paid out as tax; it is received and paid out as tax, and of course the treasurer is not entitled to the two and a half per cent. commission provided for in this clause; but money paid out to the holder of one of these military warrants in Fountain county is not paid out as taxes; it is paid out as a debt due a creditor of the county, and although it may have been received as taxes, yet not having been paid out as such, the treasurer is clearly entitled, under the clause cited, to the two and a half per cent. commission. What could be the purpose of the legislature in providing that two and a half per cent. commission should be allowed upon certain moneys for the receipt and disbursement of the same, if, as contended on the other side, all the moneys, every dollar that comes into the treasury, is included in the excepting clause? There is not a dollar in the county treasury which is not either received or paid out as taxes and school funds; but it sometimes happens, though not often, that, as in the case at bar, a considerable amount of money may be received as taxes or school funds, but not paid out as such; and in such cases the commissions are allowed of two and a half per cent. The whole controversy may be summed up in one brief question: What preceding phrase of the clause do the words, ' other than tax and school funds,' qualify? Do they qualify merely the phrase ' paid out?' If so, then the treasurer would be entitled to two and a half per cent. upon all moneys expended, except those paid as tax quotas to state, county, and township officers. Do they qualify the word ' received,' only? Then the clause is meaningless, because the county gets no moneys except as taxes and school funds, and the provision is an absurdity. The words, ' other than tax and school funds,' referred to, undoubtedly qualify the whole phrase, ' on all moneys received and paid out.' This makes the provision sen-

King v. The Board of Commissioners of Fountain Co.

sible, reasonable, and just, and is the only construction which has that effect."

Again, it is said: "The appellant in this case, King, received and paid out moneys, 'other than tax and school funds,' to the amount of two hundred and fifty thousand eight hundred and forty dollars and fifty-four cents. The evidence is, that he received and paid out the money; of course he paid it on county orders or warrants, or bonds, whatever they may be called; he could pay it out no other way. But he paid these orders. He did not redeem them. There is no evidence that a single one of these orders was ever redeemed. They were all paid, to the amount of two hundred and fifty thousand eight hundred and forty dollars and fifty-four cents, by the appellant. They were never presented for protest or acceptance. There was no occasion for their being so presented. They bore interest on their face from date. They were payable at a future day named in them. They were paid, with interest, by the appellant, but they never were redeemed by him. This appellant has not sued the county for any fees due him for the redemption of county orders. He has sued the county for the receipt and disbursement of the military loan fund."

Counsel for appellee argue as follows: "It is clear that there are two classes of money exempted from the two and one-half per cent. commission, by the clause above recited, which are tax and school fund. It is not claimed by counsel for appellant that a treasurer is entitled to the two and one-half per cent. for receiving and paying out funds of either of these classes; then it is equally plain that if the moneys received and paid out by appellant, as claimed in his complaint, was either tax or school fund, he cannot recover in this action.

"What is meant by the terms, 'tax' and 'school funds,' as used in the statutes?

"There can be no difficulty in determining what school funds mean. Any moneys set apart by law, derived from any source whatever, for the support of schools, are embraced by the terms

' school funds.' The term tax, or taxes, is defined by Webster to be ' a charge, especially a pecuniary burden which is imposed by authority, as a levy of any kind made upon property, for the support of a government.'

"From this definition, it is plain, that all moneys that come into the custody of the county treasurer from collections made by him from the levy on the tax duplicate are taxes within the meaning of the statute, and therefore are excepted by the statute from the two and one-half per cent. commission.

"If there could be any doubt of the correctness of this view of the law, such doubt would be expelled in a moment when we consider the proviso appended to the clause. The legislature, not intending that there should be any pretext for a different construction of the clause than its language would fairly import, appended a proviso as follows : ' Provided, that no percentage whatever shall be allowed the treasurer for money paid out on the redemption of county orders, but the treasurer shall be allowed five cents for each order redeemed and registered by him.'

"The legislature undoubtedly intended by the proviso to limit the fees of county treasurers for redeeming or paying off county orders presented for payment, to the five cents per order as their sole compensation for that service ; or, if not, why the necessity for the proviso? By the act of June 4th, 1861, which was the law during the period that appellant was treasurer of Fountain county, there is no per cent. whatever allowed the treasurer for paying out moneys that came into his hands from the tax duplicate. Treasurers are paid a per cent. for the collection, and that is their sole compensation, unless they pay the money out again, and if they do, they receive five cents for each county order paid off by them. There is no way to draw money lawfully from a county treasurer except on what is known as a county order, and it is expressly provided by the law, that treasurers shall receive no per cent. for paying off such orders, and are expressly limited to the five cents per order for compensation.

"Counsel for appellant argue that there is a difference between

the words 'redeemed,' or 'redemption,' and 'payment,' and, in fact, rest the whole of appellant's right of recovery on the supposed difference in the words.

"We confess we are unable to see the force of the argument so earnestly made to sustain the supposed difference in the meaning of the two words.

"There can be no difference in the meaning of the two words as used in the clause of the statute. When a county order is redeemed, it is paid; and when it is paid, it is redeemed; and that is all there is of it.

"Appellant insists that a county order cannot be said to be 'redeemed' until it is first presented for payment, and endorsed 'no funds,' and afterward when taken up by the treasurer it is redeemed or bought back, and to this class of orders alone the five-cent proviso applies, but that where the treasurer is in funds, and pays an order without such indorsement, and without protest, he is entitled to the two and one-half per cent. commission.

"It is sufficient in answer to this to say, that a county transacts all her business through the medium of officers or agents, and when an order is drawn on the treasury, it is drawn by the county through her auditor, and the county, through her treasurer, redeems the order when presented, or, to use the language of appellant's counsel, 'buys back' the order; therefore the county not only issues the order and delivers the same to the party entitled to receive it, but when presented for payment the county redeems the order back again, the whole being the act of the county through her agents, the county auditor and treasurer.

"It is claimed that appellant, King, while treasurer, received and paid out moneys 'other than tax and school funds,' to the amount of two hundred and fifty thousand eight hundred and forty dollars and fifty-four cents. If this is correct, then he is entitled to two and one-half per cent. on the amount, if he has not been before paid, or his claim barred by the statute of limitations. This the appellee denies, and that is the issue in this case."

The appellant seeks to recover a commission of two and one-half per cent. upon all moneys by him paid out in the redemption of county orders.    It very clearly appears from the evidence of the appellant and Webb, the county auditor, that after the county orders were issued on account of the volunteer fund, the board of commissioners of said county levied a tax upon all the taxable property of the county, to create a fund with which to pay off and redeem such county orders ; that the appellant collected such tax and received a commission for collecting the same at the rate fixed by law ; that with the money so collected he paid off and redeemed such county orders, and that he received five cents for each order so redeemed.    And it is now claimed that in addition to the commission for collecting the money with which he redeemed such orders, and the five cents for each order so redeemed, he is entitled to receive a commission for paying out such money, upon the ground that the money so collected and paid out is not to be regarded either as tax or school fund.    It is very obvious that it did not constitute a part of the school fund ; and it is equally as plain that it was collected as a tax.    The levy was a general and not a special one, and when collected it constituted a part of the general fund of the county, and was paid out in the redemption of the county orders.    If this was not a tax within the meaning of the statute under examination, by what authority did the appellant charge and receive a commission for collecting the same ? and if he did not redeem the county orders, why did he charge and receive five cents for each order so paid off ?    While the appellant retains the money which he received for collecting and paying said money, he ought not to be heard to say that it was not a tax, and that he did not redeem such county orders.    We think it was a tax, and that he did redeem such county orders ; and it results, that he is not entitled to receive any commission for the redemption of such county orders ; and this comports with the plain and express requirement of the proviso in question.

We have said that there has been no judicial construction of the ninth clause of section 1 of the act of June 4th, 1861,

but we find that such section is very similar to the statutes of 1831, 1843, 1852, 1853, 1855, and 1865.

It was held by this court, in *Woollen* v. *The Board of Commissioners of Jefferson County*, 4 Ind. 331, that the treasurer was not, under the act of 1843, entitled to the specified per centum for redeeming county orders, where redeemed with the revenue collected on the tax duplicate.

The ruling in the above case was adhered to in *Snelson* v. *The State, etc.*, 16 Ind. 29, and the doctrine was carried further, and applied to the statute of 1852, which was held to be, in substance, the same as the statute of 1843. These cases are, in principle, the same as the present one, and are entitled to great weight and consideration.

We think the court below committed no error in overruling the motion for a new trial.

The judgment is affirmed, with costs.