White, J.
Two questions arise in this case :
1. Whether the board of commissioners has legal capacity to sue, assuming a cause of action is shown to exist for the use or benefit of the county.
2. Whether the pleadings show such a cause of action.
The first question, in our opinion, must be answered in the affirmative; the second in the negative.
As to the first question. The seventh section of the act establishing boards of county commissioners as amended March 30, 1868 (S. & S. 89), embraces new subjects, but in all other respects the provisions of the original section are preserved. The section as found in the act of March 12, 1853 (S. & C. 244), is the same as in the act of March 5, 1831. 3 Chase, 1799. The first clause of the section provides, that the boards of commissioners, in the several counties, shall be capable of suing and being sued, pleading and being impleaded, in any court of judicature within the state. Then follows a specification of the cases in which the commissioners are authorized and required to sue in behalf of the county; but this specification was not intended to limit the capacity of the commissioners to sue to the eases enumerated in the section. This is apparent from the limited nature of the cases, as well as from other provisions of the act. Section seventeen of the act of 1853 makes it the duty of the commissioners to sue in cases not enumerated in section seven; and section eleven authorizes them to make contracts in relation to various matters provided for in that section. The power to contract carries with it the power to sue for the violation or enforcement of the contract; and the power to sue on such contracts as the commissioners are authorized to make, can not, with *206 propriety, be limited to the particular instances or causes of action specified in the seventh section.
This section, in the act of 1831, came under consideration in the case of The State, for the use of Hamilton county, v. Piatt, 15 Ohio, 15. That was a suit, instituted by the commissioners of Hamilton county, against the clerk of the court of common pleas and his sureties, on his official bond, to recover damages for his failure to pay into the county treasury certain fines, fees, and costs. The objection was made, that the commissioners were not authorized to prosecute the suit; but the objection was overruled, the court saying that the commissioners of a county can sue for and collect debts due the county, as the representatives or guardians of the county. And, in reference to the suit not being authorized by the seventh section, the court say: “ It is supposed, by defendant’s counsel, that inasmuch as in this section certain cases are enumerated in which commissioners may sue for money due the county, that they are precluded in all other cases. If this be so, then it follows that if a person is indebted to a county in any other manner, payment can not be enforced by process of law. It would not do to establish such a principle.”
It is true the action, in that case, was prosecuted by the commissioners in the name of the state; but this was because the action was on the official bond, which had to be sued in the name of the obligee. The authority of the commissioners, to sue on such bonds, was found in the act of February 23, 1816, entitled “ an act pointing out the manner in which suits may be prosecuted on the bonds of executors, administrators, and officers.” 2 Chase, 955. That act provided, that it should be competent “ for any person injured” by the misconduct of an officer to institute an,d carry on a suit, in the name of the obligee of the bond, for the use of the person so suing. It was held, in the case cited, that, in legal contemplation, the county was the person injured by the breach of duty on the part of the clerk, and that the commissioners, as the representatives of the county, were authorized to institute suit on the bonds for *207 such injury. The case of Piatt was subsequently approved, and followed in the case of The State, for the use of the commissioners of Crawford county, v. Orr, 16 Ohio St. 522. See, also, Carder v. The Commissioners of Fayette county, id. 352.
Whether the board of commissioners can maintain an action in their own name or not is to be determined by the nature of the cause of action and their relation to the subject-matter out of which it arises; and, it seems to us, the true rule is that when a cause of action for the use or benefit of the county arises out of a subject-matter within the control of the commissioners, suit may be brought thereon in the name of the board, unless by statute the suit is required to be brought in some other mode. This principle is recognized by the cases already referred to, and is well supported by other authorities. Shanklin v. The Commissioners of Madison county, 21 Ohio St. 575; Levy Court v. Coroner, 2 Wall. 501; Overseers of the Poor of Pittstown v. Overseers of the Poor of Plattsburgh, 18 Johns. 406 ; The Supervisor of the Town of Galway v. Stimson, 4 Hill, 136.
As to the second question: There is no denial, in the reply, of the facts averred in the answer, that the warrants were issued, on the order of the commissioners, in payment for work done by the defendant, on account of the county, under a contract with the commissioners. It is alleged, in the reply, that the contract -was illegally entered upon, and that the commissioners were not authorized by law to contract for the services. But of what the services consisted is not stated, nor is there any statement of facts upon which the allegation of illegality and want of authority is founded. As the allegation stands, it is a mere averment of a legal conclusion; and, as a pleading, is of no legal effect or significance. Knox County Bank v. Lloyd’s Adm’r, 18 Ohio St. 353; Railroad Company v. Wilson, 31 id. 555; Rolling Stock Company v. Railroad, 34 id. 467; Miles v. McDermot, 31 Cal. 271.
No fraud is alleged to have been practiced on the commissioners in inducing them to allow the claim and to order its payment; nor is it alleged that the allowance or *208 order was made under any mistake. Now, it certainly requires neither argument, nor the citation of authorities, to show that where work has thus been done, on account of the county, under an agreement with the commissioners, and has been accepted and paid for, that they can maintain no action, in the absence of fraud or mistake, to recover back the money thus paid.
True, it is averred in the petition that the defendant fraudulently represented to the auditor that he was entitled to warrants on the treasury for the amount of his claim. But there is no materiality in this averment. The authority of passing upon the validity of the claim, and of allowing or disallowing it, was not vested in the auditor, but in the commissioners. 1 S. & C. 98, § 13; id. 251, § 38.
It is claimed on behalf of the plaintiff in error, that the contract between the commissioners and the defendant, under which the work was done, is void, under the act of March 9, 1866, relating to the duties of county commissioners. S. & S. 86. The ground on which the contract is claimed to be void is the averment, in the reply, “ that the said pretended contract was let without competition — no advertisement for proposals to do the work having been made.”
The presumption is that the contract was duly entered into; and to make the objection available, the reply ought to show that the subject-matter of the contract is within the purview of that act. All contracts that the commissioners were authorized to make for services to be rendered to the county, are not embraced in the act referred to. This is apparent from the case of The State ex rel. v. Yeatman, 22 Ohio St. 546, relied upon by the plaintiff in error. In speaking of the contract then in question, the court say : “ We find no statute expressly empowering them ” (the commissioners) “ to make the contract. Nor do we think the power can be implied from the acts of 1851, 1857, and 1859, S. & C. 1282, from which it is claimed in argument. These acts relate to transcribing the county records, for their pre *209 servution and use in the offices to which they belong ; and the persons employed to do it are to be compensated at a fixed rate, by the hundred words.”
As already remarked, the character of the work stipulated for in the contract is not set out; and it devolved upon the party seeking to impeach the contract, to plead the facts showing its invalidity.
Ample power was conferred on the commissioners by the act of April 2,1859, supra, to contract for work to be done for the county ; and, in the absence of any showing to the contrary, the power will be presumed to have been lawfully exercised.
Whether, if the contract were shown to have been made in contravention of the act of March 9,1866, it would make any difference as to there being no right to recover back the money paid for the work, we need not decide; but such right is, to say the least, questionable. See Snelson v. The State, 16 Ind. 29 ; The Board of Commissioners v. Saunders, 17 Ind. 437 ; Supervisors v. Briggs, 2 Denio, 26 ; Commissioners of Catawba County v. Selzer, 70 N. C. 426.

Judgment affirmed.