## BOARD OF COMMISSIONERS OF WARREN COUNTY *v.* GREGORY.

STATUTE.—*Assessment Law.*—*Printing of Delinquent List.*—*Compensation.*— Sections 142 and 143 of the assessment law, as amended May 31st, 1861, require that the compensation for the publication of the delinquent list shall be made on the basis of tabular description, as contained in the duplicate, and have no reference to the number of columns in the newspaper.

EXCESSIVE PAYMENT.— *Voluntary.*—Where the commissioners have allowed an excessive claim for printing the list, there being no mistake of fact, the list being before them, and it being their duty to know the fact, the money cannot be recovered back.

BOARD OF COMMISSIONERS.—*Allowance of Claims.*—*Judicial Decision.*—*Con-clusiveness.*—The board of commissioners, in acting upon claims against the county, act in a judicial capacity, and their decisions are conclusive and bind-ing alike upon the county and the claimant, unless appealed from, or unless an independent action is brought against the county when the claim has been disallowed.

APPEAL from the Warren Common Pleas.

BUSKIRK, J.—This was an action by the appellant against the appellee to recover back the sum of two hundred and eighty-two dollars and sixty cents, which it was alleged had been illegally demanded by the appellee, and wrongfully paid by the appellant, for printing the delinquent list of Warren county.

There was issue, trial by the court, a special finding of facts, with conclusions of law thereon, and exception to the conclusions of law by appellant.

The special finding of facts and the conclusions of law thereon are as follows: "In the autumn of 1870, the defendant, at the request of the auditor of the county, and according to statute, published the list of delinquent taxes of said county, filed his bill before the board of commissioners, and was allowed five hundred and sixty-five dollars and twenty cents, which sum was then paid him for such services; that defendant performed the work of printing such delin-quent list; that there were four hundred and seventy-one lines of descriptions on the duplicate, as furnished by the auditor to the printer; that the printer doubled his columns in his newspaper, and printed four hundred and seventy-one

lines, double—columned in the paper; that printed in single columns the four hundred and seventy-one lines would have made nine hundred and forty-two lines, and were equal to nine hundred and forty-two lines in the advertising column of a newspaper; that defendant charged according to the number of lines of description in a newspaper column, and not according to the number in the auditor's duplicate; that the list was printed in smaller type than ordinary newspaper type, and smaller than defendant ordinarily used in his paper; that defendant's bill, as presented, did not indicate the number of lines he claimed to have published.

"On these facts I find the defendant received no more than he was entitled to, and therefore find for the defendant.

"JNO. M. LARUE, Judge."

The appellant has assigned for error that the court erred in its conclusions of law upon the facts found.

According to the facts as found, there were only four hundred and seventy-one lines of descriptions in the duplicate, as furnished by the auditor to the printer, but the printer doubled his columns in his newspaper, and printed four hundred and seventy-one lines double-columned in the paper, which, if printed in single columns, the four hundred and seventy-one lines would have made nine hundred and forty-two lines, and were equal to nine hundred and forty-two lines in the advertising column of the newspaper.

The real question is, whether the defendant was entitled to charge and receive pay for four hundred and seventy-one or nine hundred and forty-two lines of tabular description, valuation, and taxes, the solution of which depends upon whether the number of lines was to be computed according to the list as made out by the auditor, or the number of columns as printed in the newspaper.

This involves a construction of sections 142 and 143 of the assessment law, as amended by the act of May 31st, 1861.

Such sections read as follows:

"Sec. 142. Between the first and fifteenth days of Decem-

ber annually, the county auditor shall make out and record, in a book provided for that purpose, a list of all lands returned and remaining delinquent for taxes, describing such lands as the same are described in such duplicate, and charging them with the amount of delinquent tax, with interest, and a penalty of ten per centum on such taxes; also, with the taxes of the current year, and shall certify to the correctness thereof, with the date when the same is recorded, and sign the same officially.

"Sec. 143. He shall cause a copy of such list to be immediately published, for four weeks successively, once in each week, in a newspaper having general circulation in his county (if any be printed therein), at a cost of not to exceed fifteen cents for each insertion of every line of tabular description, valuation and taxes, in such list, and in case the publisher of such newspaper should refuse to publish the same on the terms herein provided, it shall be the duty of the auditor to have said list printed in handbill form, on the best terms that can be had, three copies of which shall be posted up in public places in each township of his county, at least four weeks before the day of sale, to which shall be attached, and in like manner published, a notice that so much of said land as may be necessary to discharge the taxes, interest and charges thereon, or due from the owner thereof at the time of sale, will be sold at public auction at the court-house in such county, on the first Monday in February next, thereafter." 3 Ind. Stat. 518.

It is maintained by the appellant, that the true construction of the above sections is, that in determining the number of lines of tabular description, valuation and taxes, reference is to be had only to the list as prepared by the auditor, and that the appellee was only entitled to charge sixty cents for four insertions of such list as prepared by the auditor.

The appellee insists that a line of tabular description, valuation, and taxes in such list means a line across one column of the newspaper in ordinary type, and if a line in the auditor's list runs across two columns of the newspaper

in ordinary type that it would make two lines of tabular description within the meaning of the above sections.

The court below was of the opinion that the construction contended for by the appellee was correct, and rendered judgment against the appellant.

We are required to determine whether the court below erred in its construction of the statute. It is quite obvious to us that the court erred in its construction of the statute in question. The language of the above sections seems to leave no room for doubt as to the true meaning thereof. By section 142 the auditor is required to make out a tabular list, and by section 143 he is required to have such list published, at a cost of not to exceed fifteen cents for each insertion of every line of tabular description, valuation and taxes, in such list. We have thus far construed the above sections as though they stood alone. An examination of other sections of the assessment law will greatly aid in arriving at the legislative intention.

By sec. 13, 1 G. & H. 87, the assessors of real estate are required to make their returns in tabular form.

By secs. 75, 76, 77, 78, 79, and 80, of said act, the auditor's duplicate is not only required to be in tabular form, but in lines of tabular descriptions, valuation, and taxes; and the delinquent list, as far as it goes, is but a copy or transcript of the auditor's duplicate, and it is and must be not only tabular in form, but must contain the lines of tabular description in conformity to the statute. It seems to us, therefore, that it must necessarily and unavoidably follow that when the legislature provided, that the printer should have fifteen cents for each insertion of every line of tabular description, valuation, and taxes in such list, it was intended that the computation should be made of the lines of tabular description as contained in the duplicate, and had no reference to the number of columns in the newspaper.

By section 143, the printer is required, when the list is presented to him by the auditor, to determine whether he will print it for the price named. The auditor cannot leave such

list, unless the printer agrees to print it at such price. How could he determine then and there, if it depended upon the number of columns in his newspaper?

By sec. 77 of said act, the auditor is prohibited from advertising any tract or lot unless the taxes due amount to double the cost of advertising. If the position assumed by the appellee be correct, the auditor could not determine before publication, whether the cost of advertising a tract or lot would amount to fifteen, thirty, forty-five, or sixty cents for each insertion, as he would not know how many columns there would be in the newspaper. If the computation is made upon the list prepared by the auditor, he can know in advance what will be the cost of advertising.

It is provided by sec. 202 of said act, that the expense of advertising delinquent lands in public newspapers shall be paid out of the county treasury, and the amount thereof is to be charged to the respective tracts advertised. Unless the rate fixed by statute, being sixty cents for four insertions, of every line of tabular description in the auditor's list, is to control, and unless each tract or lot carried out makes a line of tabular description, the auditor cannot determine, in advance, the cost of advertising such tract or lot, so as to put it in the delinquent notice and to charge the cost thereof to the respective tracts or lots advertised.

We are of opinion that the court below erred in holding that the appellee charged no more than he was entitled to.

It is, however, maintained by counsel for the appellee, that conceding, that there was an overcharge and payment, the money so paid cannot be recovered back, for the reason that the same was voluntarily paid, with full knowledge of all the facts, or with the means of full knowledge. In the recent case of *The Lafayette, etc., R. R. Co.* v. *Pattison,* 41 Ind. 312, a very careful and thorough examination of the authorities was made with the view of ascertaining what were voluntary, and what were compulsory payments, and when, and under what circumstances money paid could be recovered back, and we do not now deem it necessary to

Board of Commissioners of Warren County *v.* Gregory.

re-examine the authorities or enter into any extended discussion of the principles of law involved.

It is well settled that money paid through a mistake of law cannot be recovered back; and it is equally well settled that money paid with a full knowledge of the facts, or with the means of knowing the facts, cannot be recovered back. On the other hand, the doctrine is firmly established, that money paid in ignorance of the facts, or under duress of person or goods, or to prevent an officer from seizing and selling property or money obtained by extortion or by taking an undue advantage of the necessities of a person, can be recovered back.

The printing done by the appellee was done for the county, upon the employment and by the direction of the county auditor, who is the clerk of the board of commissioners. The auditor had furnished the list to the appellee, and had in his office the record containing the delinquent list. The appellee presented to the board of commissioners his claim for publishing the delinquent list. The court does not find that there was any mistake of fact. The only finding upon that subject is, "that defendant's bill as presented did not indicate the number of lines he claimed to have published." Did the board of commissioners know, or had they the means of knowing, the number of tabular lines of description which had been published? They certainly had the means of knowing, and the duty of knowing was imposed upon them by a positive statute.

The powers of the board of commissioners are defined and prescribed by the thirteenth section of the act providing for the organization of county boards (approved June 17th, 1852). The second clause of said section is as follows:

"2. To allow all accounts chargeable against such county, not otherwise provided for, and to direct the raising of such sums as may be necessary to defray all county expenses." I G. & H. 250.

The twenty-fourth section of said act reads as follows:

"Sec. 24. No allowance shall be made by such commis-

sioners, unless such person [the claimant] shall file with such commissioners a detailed statement of the items, and dates of charge, nor until such competent proof thereof is adduced in favor of such claim, as is required in other courts; but if the truth of such charge is known to such commissioners, it may be allowed without other proof, upon that fact being entered of record in the proceedings about the claim." 1 G. & H. 252.

It is too plain to admit of argument that if the commissioners allowed the claim from their personal knowledge, there could be no mistake or ignorance as to the facts, and that money so paid cannot be recovered back.

But suppose the claim was allowed on insufficient proof. What would be the force and effect of such allowance? In what capacity do the commissioners act in allowing claims against the county? Can such allowances, as between the claimant and the county, be regarded as adjudications?

It is exceedingly difficult to give a satisfactory answer to the above questions. There is no direct adjudication covering the questions, although there are several decisions bearing upon the questions propounded.

It was held by this court in *Lyons* v. *Miller*, 17 Ind. 250, that the commissioners, having allowed a claim for building a bridge, could not, in the absence of, and without notice to, the claimant, rescind and set aside such allowance.

This court, in *The Board of Comm'rs of Posey Co.* v. *Saunders*, 17 Ind. 437, uses the following language: "The board of commissioners have very full powers in reference to the affairs of their respective counties. 1 R. S. pp. 225–230. They control the county property, allow accounts, direct the raising of sums, etc., and audit the accounts of all officers having the care, management, collection or disbursement of any money belonging to the county, or appropriated for its benefit. Section 13.

"We are of opinion that under these and various other statutes that might be referred to, the board of county commissioners have a supervisory control over the finances of

the county, and consequently have the power to settle in reference to the same, and to bind the corporation by such settlement."

- The above case was an action by the county against a former county treasurer, to recover money which it was alleged he had received and failed to account for. The treasurer, among other things, pleaded that he had settled with the board of commissioners, who had allowed his claims and demands against the county. The answer was held to be a complete bar to the action.

It was held by this court, in *The Board of Commissioners of Warrick County* v. *Butterworth*, 17 Ind. 129, that "under the present constitution and statutes, the board of county commissioners is, to some extent, a corporation, with powers incident thereto, and prescribed by statute, as well as limited judicial powers."

We have, after much reflection and upon mature consideration, reached the conclusion that the board of commissioners, in acting upon claims against the county, act in a judicial capacity, and that their decisions are conclusive and binding, alike upon the county and the claimant, unless appealed from, or an independent action is brought against the county where the claim is disallowed. *The Board, etc.,* v. *Ford,* 27 Ind. 17; *Snelson* v. *The State,* 16 Ind. 29; *Weston* v. *Lumley,* 33 Ind. 486. By section 24 of said act heretofore quoted, the commissioners are prohibited from allowing a claim, except where they act upon their personal knowledge, "until such competent proof thereof is adduced in favor of such claim, as is required in other courts."

By section 31 of said act, an appeal is allowed from all decisions of the commissioners by the person aggrieved, but if such person shall not be a party to the proceeding, the appeal shall not be allowed, except upon affidavit showing an interest.

In the present case, the claim against the county was not only allowed, but was paid. There was no appeal. The order making the allowance has not been rescinded, but

remains in full force. It is binding and conclusive upon the county, and the money paid in pursuance thereof cannot be recovered back.

The judgment is affirmed, with costs.

*J. H. Brown*, for appellant.

*B. F. Gregory*, for appellee.