14  187
17  115
e17  117
s32s  361.

### [No. 1687.]

## THE BOARD OF COUNTY COMMISSIONERS OF RIO GRANDE CO. v. BLOOM.

1. PRACTICE—CLAIMS AGAINST COUNTY—PRESENTATION TO BOARD.

In an action against the board of county commissioners on a claim against the county, it must be alleged and proven that the claim was presented to the board of county commissioners for audit and allowance and was rejected, or that a reasonable time has elapsed since its presentation and the board has failed or refused to act on the same.

2. ELECTIONS—PUBLICATION OF LIST OF NOMINATIONS—EVIDENCE —VALUE OF PUBLICATION.

In an action against a board of county commissioners by a publisher of a newspaper for the value of space and work in publishing a list of nominations for office, testimony that the amount sued for was the customary and reasonable charge for that sort of work in the state is not sufficient proof of the value ; the proof must be as to the value of the space and the work in the particular paper in which it was published.

3. SAME.

In an action to recover for publishing a list of nominations for office, where the plaintiff testified as to the value of the publication, it was error to refuse to permit the defendant's counsel to cross-exam-

ine him as to the cost and value of labor and material which went into the publication, and also with reference to sale of space in the same paper at other times and for other purposes.

*Appeal from the District Court of Rio Grande County.*

Mr. CHARLES M. CORLETT, for appellant.

Mr. JESSE STEPHENSON and Mr. IRA J. BLOOMFIELD, for appellee.

Mr. EUGENE ENGLEY, of counsel.

BISSELL, P. J.

On the 10th of February, 1897, Bloom began this suit against the county commissioners of Rio Grande county to recover $1,029.50 for publishing six times in a newspaper called the "Del Norte Daily Enquirer," a list of the nominations of officers to be voted for at the general election to be held in November, 1896. He alleged he was entitled to pay at the rate of seventy-five cents per inch or folio for the first publication and forty cents for each subsequent publication, and to count the space by inches or by the theoretical folios which it would take to occupy those inches, and he was therefore entitled to receive the sum for which he brought suit. He alleged that he presented the claim for audit and allowance to the board when in regular sessions on the 11th of January, 1897; that the board remained in session until January 22, when it adjourned, having failed or refused to allow the claim or any part of it. The plaintiff subsequently amended his complaint and inserted an allegation of the reasonable value of the services. This was on the hypothesis, I suppose, of a decision of this court, wherein we held that the statute giving printers seventy-five cents a folio for the first insertion and forty cents for each subsequent publication, did not refer to publications of this description but only to legal documents. However that may be, the amendment was made.

The board demurred to the complaint and when the demurrer was overruled they answered, admitting the publication, but denying the value and setting up that the board referred the bill to a legal adviser for his opinion, and that the matter could not be determined until the next regular meeting which was always holden in April. The curious thing about the whole matter is that neither side presented any testimony about the rejection of the claim nor was any action of the board ever proven. This matter seems to have been wholly lost sight of, and the case tried simply on one question, viz, the reasonable value of the services rendered.

There are at least three persuasive and controlling reasons for the reversal of this judgment. It may be debatable whether any one of them alone would suffice, and thereon we could satisfactorily rest our decision. From a careful examination of the whole record, however, we conclude the situation compels the result.

We are very greatly embarrassed in our determination of the first question by what has already been suggested respecting the condition of the record. There is no doubt a plaintiff must prove the presentation of his claim to the board of county commissioners for audit and allowance, and it must be rejected, or a reasonable time for action must elapse before he may commence an independent suit to recover it. This question has been indirectly considered by this court several times, though we have had no occasion to decide it.

The matter has been recently before the supreme court, and the cause was decided at the present term. *Board of County Commissioners of Rio Grande County v. Jas. F. Phye,* 59 Pac. Rep. 55. In this case the court held the presentation of a claim for audit and allowance a condition precedent to the right to maintain an action thereon in any court. This disposes of that proposition. The complaint was not demurrable because it alleged the board adjourned and failed and refused to allow the claim or any part of it. Had the allegation been supported by competent proof, it would have supported the suit. There was likewise an aider by the an-

swer of the defendant, which conceded the claim had been presented for audit, but there was an averment of a necessity to examine it and obtain a legal opinion about it before either allowing or refusing it, and further that there was not time prior to the adjournment of the board to obtain the opinion. This matter was not made the subject of proof at the trial. For these reasons we are left in the dark as to precisely what the situation was, and we find it difficult to decide what course ought to be taken with reference to this particular proposition. The presentation was necessary. This was alleged. A refusal either actual or presumptive is likewise necessary. This was alleged. The defendant attempted to aver the necessity for legal examination, and the want of sufficient time before adjourment for this purpose. This might have been enough but it is not proven. Both these matters ought to have been the subject-matter of evidence. We do not intend to hold there must be a direct refusal to pass on the claim. A refusal to adjust or audit may be a matter of legal inference from the lapse of time, and thereby as well established as by exact evidence of a refusal by the records of the commissioners. The one surely ought to be the equivalent of the other. What the future trial may show we cannot anticipate. We can only indicate that if there be proof on the trial that at the subsequent meeting in April the board still failed to pass on it, the law would attach as a result the force and effect of a refusal and justify and warrant the suit. All we intend to decide is, that there must be a presentation for audit, and in the next place there must be a reasonable time allowed the board for this purpose before beginning a suit. Under the peculiar circumstances of this case we are not inclined to hold that the suit ought to be dismissed because begun too soon, providing the proof on the trial shows the lapse of another session of the board and a failure to pass on the claim, or to either refuse or allow it. We simply decide the board must be allowed a reasonable time because the whole theory of the statute is, the board must be given an opportunity to pass on the claim,

It cannot be possible the law is, that a party may present a claim one day and the third day thereafter, it not having been allowed or refused, assume a refusal and begin suit. The term "audit" implies an examination and a consideration. In a case like the present, where it is at least a doubtful proposition, and where prior to a decision of this court it was assumed by people generally, and possibly by the profession, the statutory compensation was allowed for this class of work, there should have been, and we think the law gave the board a reasonable opportunity to pass on the question. The nature of an audit is very well settled by the adjudications. *Sanborn v. United States*, 135 U. S. 271; *People ex rel. Brown v. Board of Apportionment and Audit*, 52, N. Y. 224; *Morris v. People*, 3 Denio, 381; *Brown v. Otoe County*, 6 Neb. 111; *Board of Commissioners v. Gregory*, 42 Ind. 32; *Mixer v. Manistee County*, 26 Mich. 422.

We therefore conclude the court should have compelled the plaintiff to make proof on this subject, or when he failed to make proof and the cause went to the jury, a new trial should have been granted.

There is still another proposition which to our minds is equally fatal, and this also concerns a defect in the plaintiff's proof. Manifestly, under the decision the plaintiff could not recover without proof of a special contract whereby the price was fixed unless he established by competent evidence the value of the service which he had performed. The bill of exceptions has been read and reread to ascertain whether there is within its limits in the testimony of any witness competent proof on this subject of value. We are very frank to say, we are wholly unable within the four corners of the bill to find satisfactory evidence of the value of this work. There was offered by the plaintiff and given by two or three of his witnesses, testimony to the point that this was the customary and a reasonable charge for that sort of work in Colorado and at various points in it. As we look at it, this does not prove the plaintiff's case. We do not undertake to say, for the evidence is very meager and unsatisfactory to

the proposition, on what basis the value of the publication is to be computed. It is a matter of common information which has come to us that newspapers sell space. In computing the price which they shall charge for work, it is either computed by the inch or by the folio, printed in a certain type, either one or both, and the one being sometimes at least the equivalent of the other. We also know space is of more value in one paper than in another. This is determinable from many considerations well understood by the community. The status of a paper and its circulation, the locality in which it is published and the community which it reaches, all these matters are things which are taken into consideration in determining the value of space in a given paper. While this is true, it certainly is not evidence of reasonable value to state what a customary price is among papers in the state. What would be a reasonable price for leading metropolitan journals, would not be a reasonable price for a paper published in Dolores and Costilla counties. The value of space in a paper published in El Paso, Pueblo, or in other counties in the state, would be no measure of the value of space in papers published in Costilla, Conejos, Dolores, Rio Grande or many other counties in the San Juan district. This is manifest and self-evident, and requires no argument to demonstrate it. The reasonable value of this service must be determined by evidence showing the value of space in the Del Norte Daily Enquirer at Del Norte. Of course this can be shown in many ways, no one of which need be referred to or commented on, but that it must be the subject of proof is exceedingly clear. There are many other elements which the profession takes into consideration in determining the value of space which could not in the nature of things be the subject of proof. Competition and the interests of other papers published in the locality might in some instances color and shade the testimony and lessen its value. But it is quite evident proof of advertised charges for space in a particular paper if any has been made, the sale or offer to sell space at other times and for different purposes

would be both material and competent. There was no evidence in this respect as to what the value of space was in that particular paper in that particular locality. There was no attempt to show it, either by proof of what space generally sold for in any Colorado paper, or by any proof of the cost of the publication, the cost of the material, the amount of labor necessary, nor was there proof of any of the elements which taken all together would establish the reasonable value of this publication. Beside this there was evidence *per contra* that the value of this publication did not exceed $100 to $140. The jury evidently were unable to determine where the truth lay and they found on neither one side nor the other, but agreed on a compromise verdict for $750 which there was no evidence in the record to justify. The plaintiff's evidence was to the point that the value of this service, being the customary price, was $1,029.50. The evidence of the defendant was that in no event did it exceed $140. Evidently there was no intermediate point between the two on which a verdict ought to have been rendered. Whether there was or was not, we are so thoroughly well satisfied there was no sufficient competent evidence to show the reasonable value of this publication that we do not believe this verdict ought to be permitted to stand. We are quite ready to concede the force of the verdict of a jury or the finding of a court, and we almost universally accept it, but where a case is presented which exhibits substantially none to support the verdict, we feel compelled in the interests of justice and for the protection of the rights of the people to set aside a judgment entered thereon. This is but an added reason why this judgment should be set aside and a new trial granted, that the parties may be permitted an opportunity to produce such proof as they may respecting the reasonable value of this publication, and when such evidence is produced and a verdict follows, we may be able consistently and conscientiously to affirm it.

There is another reason why this judgment should not be permitted to stand, which is based entirely on the rulings of

the court with reference to the admission and rejection of testimony. There was an attempt to cross-examine the plaintiff when he was on the stand respecting the subject-matter of his bill, and many questions were put to him directly to the point of the cost and value of the labor and the material which went into the publication, and more particularly with reference to the sale of space in the paper at other times and for other purposes than for publication of the sample ballot.

Defendant's counsel were not permitted to pursue this line of cross-examination, and in this we think the court very clearly erred. The defendant asked the plaintiff respecting his publication of the tax list in the paper, or rather his offer to publish it at three cents a folio, and likewise his offer to publish all the other legal publications of the county at five cents per folio at that time and during that year. It is quite probable, so far as the tax list is concerned, proof of this offer to publish at three cents would not be at all conclusive respecting the value of space, since it is a matter of common knowledge papers are desirous to obtain this publication because of the collateral advantages which are derived from it. However this may be, it was competent to ask the question and make the proof, leaving it to the plaintiff to explain the reason of his offer, and should it appear the offer was made not on the basis of the value of the space, but because of collateral advantages, this might be considered by the jury as of greater or less weight in determining the force of the testimony. It is clear this line of examination ought to have been permitted and the plaintiff interrogated respecting this offer. It is likewise plain the defendant should have been permitted to examine the plaintiff when he was on the stand respecting his offer to sell space in the paper to the county at five cents or any other sum per folio or per inch which was so much less than that which was charged for the publication of this sample ballot. What weight it would have with the jury we cannot determine, but it ought to have been admitted as tending in a greater or less degree as the case might be, to show the value of space in the Del Norte Enquirer at that

date.　It would be quite as competent to show this as it would be to show the price which the Del Norte Enquirer generally charged for advertisements which appeared in its paper at that time of either articles of merchandise, legal publications or advertisements of any other description.　That such proof would have been competent is beyond question, because such proof would clearly tend to show the value of space, and if the sum which the plaintiff was entitled to charge for the publication of this ballot was legitimately and properly based on the value of space, such testimony would more clearly and more accurately than any other evidence, demonstrate what it was.　It is manifest that the publisher may not arbitrarily fix a rate and collect it unless he is able to prove that it is under all the circumstances both just and reasonable.　A fixed sum cannot be assumed to be the value unless it has been made the subject of contract, or there are circumstances from which an agreement to pay that price may be implied.

These reasons collectively clearly show that error inheres in the record, the case was not correctly tried, the rights of the parties were not well protected, and for these errors in our judgment the case ought to be reversed and sent back for a new trial in conformity with this opinion.

*Reversed.*