## PEARSON *v*. STATE.

### Opinion delivered April 30, 1892.

*Burglary of county funds—Legislature may release treasurer.*

The legislature is not precluded from passing an act to release a county treasurer from liability for school and county funds stolen by burglars, without fault on his part, from a safe furnished him by the county, by reason of the provision of sec. 3, art. 14, of the State Constitution, which ordains that no school tax shall be appropriated to any other purpose than that for which it was levied, nor by the provisions of the State and Federal Constitutions that prohibit legislation divesting property rights or impairing the obligation of contracts.

Appeal from Logan Circuit Court.

HUGH F. THOMASON, Judge.

*A. S. McKennon* for appellant.

Political divisions of the State government do not sustain such relations to the State as to create between them and the State such a contract as is contemplated by the Federal and State Constitutions. See Cooley, Const. Lim. pp. 150, 337; 4 Wheat. 518; 6 How. 301; 16 *id*. 369; 3 Wall. 51. These principles apply only to *private* corporations, and not to mere agencies of government or parts of its machinery. An entirely different rule prevails as to *public* corporations, or those created for *public* purposes only. The legislature may, at will, create, modify or abolish these. Bish. on Cont. 561. The prohibitory clause of the Constitution only applies to private rights and contracts, and the charters of such bodies as are essentially public in their nature and purposes are not contracts, nor protected from legislative

interference.   3 Am. and Eng. Enc. Law, 745; Black on
Const. Prohibition, secs. 44–50; 3 Pars. on Cont. 529;
4 Ohio, 427; 13 Ill. 27; 15 B. Mon. 642; Cooley, Const.
Lim. 150, 337; 10 How. 511, 513.   Counties, townships
and school districts are only *quasi* corporations, and are
part of the machinery of the government.   The legisla-
ture has absolute control over them and the taxes raised
by them or for them.   See 25 Ill. 187–191; 100 U. S.
548.   Sec. 3, art. 14, Const., has no application.   There
is no attempt to *appropriate* the funds.   The funds are
gone, and the only question is the relief from liability of
innocent parties.   Cooley, Const. Lim. 201.

*Anthony Hall* for appellee.

1.   The act of February 15, 1889, is unconstitutional
and void because it annulled the contract by judgment
that bound Pearson and his sureties to pay Logan county
and the school districts the amount due them, and sus-
pended the operation of the general law in force for the
benefit of appellants.   It thus impairs the obligation of
contracts, within the prohibition of both the Federal and
State Constitutions.   Mansf. Dig. secs. 1187, 4771, 6344,
6172; 1 Wait's Actions and Def. p. 72; 1 Parsons on Con-
tracts, p. 6; 2 Wait's Ac. and Def. 305; 31 Ark. 387; 38
*id.* 454; Cooley, Const. Lim. (5th ed.) 292; 18 Cal. 590;
1 Kent's Com. 275; 105 U. S. 13; 4 Wheat. 694–5; 54
Tex. 153; 28 Ark. 329; Const. 1874, art. 2, sec. 17;
Const. U. S., art. 1, sec. 10; 1 How. 311; 2 *id.* 608;
24 How. 461; 102 U. S. 203; 96 U. S. 69; *ib.* 432;
Cooley's Const. Lim. (5th ed.) 352, 353.   The act was
an attempt to deprive appellees of their right, under the
laws of the State, to have their judgment enforced, and
is therefore void.   Const. 1874, art. 2, sec. 17; Cooley's
Const. Lim. (5th ed.) pp. 352–3; 28 Ark. 555; 1 How.
311; 2 How. 608; 2 Wall. 10.   It was in direct conflict
with sec. 25, art. 3, Const.; Cooley, Const. Lim. (5th ed.)
p. 438, 445.

2.   The act appropriated school funds, acquired by local taxation in each of these various school districts, for other purposes than that for which they were levied. Const. Ark., art. 14, sec. 3 ; 46 N. W. Rep. 914 ; Mansf. Dig. sec. 6204 ; Cooley, Const. Lim. (5th ed.) 296 ; 54 Tex. 153 ; 15 How. 304 ; Angell & Ames on Corp. secs. 779, 779a.

HEMINGWAY, J.   The single question in this case is, whether it was competent for the legislature to release the treasurer of Logan county from his liability to pay the county and various school districts therein the amounts received by him for them, on the ground that the money was taken by burglars, without fault on his part, from a safe furnished him by the county for keeping it.

The appellant contends that the power of the legislature was absolute ; that counties and school districts are but agencies of the State created by it to aid in the conduct of government, and that they, with their possessions, are subject to the will of the legislature, to be controlled, maintained or destroyed as it directs—except as the power is limited by provisions expressly applicable to it.

The burden is upon the appellee to show that the power is denied to the legislature.   He insists that it is denied (1) by the provision of section 3, art. 14, of the State Constitution, which ordains that no school tax shall be appropriated to any other purpose nor to any other district than that for which it was levied ; and (2) by the provisions of the State and Federal Constitutions that prohibit legislation divesting property rights or impairing the obligation of contracts.   Secs. 8–17 and 21, art. 2, Const. 1874 ; Const. U. S. sec. 10, art. 1, and 14 amdt.

We think it clear that the appellee's first ground is not well taken.   The provision relied upon prohibits only certain appropriations of the school tax, and, as the act

of the legislature relied upon by the appellant did not appropriate the school tax, or any part of it, it does not contravene that provision.*

The school tax, to which alone the Constitution applies, had been appropriated by burglars, as the preamble of the act recites, before its passage, and was not subject to legislative appropriation. The act did not concern it, but concerned only the liability of a keeper of public money, by the terms of a bond, to indemnify the various municipalities interested in it against his failure to pay over moneys thus lost. If the enactment transcended the powers of the legislature, the limitation must be found in the other provisions relied upon, and not in the one under consideration.

If the bond had been executed to a private individual, it is clear that the legislature could not have released the liability; but whether the constitutional provisions for the protection of private contract, and property rights, which are found in much the same form in the constitutions of most of the States and of the United States,

---

*The act referred to is as follows :

" Whereas, W. H. Pearson was, on the 17th day of February, 1887, Treasurer of Logan county, Arkansas, and then had in his possession and keeping the various funds belonging to said county and the various school districts therein, aggregating a sum between eleven thousand and twelve thousand dollars in currency, which was by said Pearson deposited in a fire-proof safe furnished by said county for that purpose, said safe being placed in a vault in the Clerk's office of said county with two iron doors ; and

" Whereas, On the night of said 17th day of February, 1887, said safe was burglarized and all of said funds stolen therefrom, without fault of said W. H. Pearson ; *Therefore,*

" *Be it enacted by the General Assembly of the State of Arkansas :*

" Section 1. That said W. H. Pearson and (omitting names of sureties), the sureties on his bond as such Treasurer of Logan county, be, and they are hereby, relieved of any and all liability for, or payment of, any and all of said funds, aggregating between eleven and twelve thousand dollars, and from any damages, penalties, interest and costs, in any manner pertaining or incident thereto." Acts 1889, p. 181.

apply to the contracts and property of municipal and *quasi* municipal corporations, is a question upon which judicial deliverance has been frequent, full and not entirely uniform. There is no legal question upon which the books contain a richer or more abundant treasure of learning and judicial argumentation.

It was indicated in the Dartmouth College case* that the right of the legislature, as regards the property of municipal corporations, was broader than existed in the case of private corporations, and from that time to the present this has been a conceded principle. But it was said by different judges, in their separate opinions in that case, that the power of the legislature over the property of corporations purely public was not absolute or unlimited ; and while there are some later cases to be found that seem to question this view, it is generally approved, and it is now established that though such property is subject to a very broad legislative regulation, its confiscation or diversion violates the provisions relied upon. *Board of Park Com.* v. *Common Council*, 28 Mich. 240.

The power of regulation seems to have no limit within the scope of municipal uses, and is restrained only when it attempts a total diversion. It affords a wide, almost limitless, field for legislative action. The legislature may do with the property whatever the municipality is bound to do, either at law or in equity ; or whatever upon recognized moral principles ought to be done ; and it has been held that it may do acts of charity or gratitude for the municipality—though this can not be considered as established.

It seems profitless to repeat the arguments and conclusions with which the books abound upon the subject. All the purposes of this case are met when we announce our conclusion ; those interested in the subject will find

*Dartmouth College* v. *Woodward*, 4 Wheat. 518.

in the references a treatment to which the writer could hope to add nothing.

The statement that counties and school districts are agencies of the State, and therefore subject to legislative control or annihilation, is a misleading generality. The corporate entity is a legislative creation, and its powers may be restrained, its functions changed, or its existence destroyed, at the will of the legislature; but in so far as it has acquired and holds property, it is but a trustee for the local public; and although its powers be withdrawn or its existence ended, the property which survives it belongs to the same public, and must be in some way applied to its use. It has no contract right to exist as a corporation, but the public that it represented has a vested right in the municipal property acquired for its benefit, and is entitled to demand that such property be applied to its uses. Cooley's Const. Lim. (6th ed.) p. 291; *Lucas* v. *Board of Commissioners*, 44 Ind. 524; *Skinkle* v. *Essex Road Board*, 47 N. J. L. 93; *Town of Milwaukee* v. *City of Milwaukee*, 12 Wis. 93; *Essex Road Board* v. *Skinkle*, 140 U. S. 334; *City of N. O.* v. *N. O. Water Works*, 142 U. S. 79; *Hasbrouck* v. *Milwaukee*, 13 Wis. 50; *State* v. *Haben*, 22 Wis. 660; *People* v. *Hurlbut*, 24 Mich. 95, *et seq.*; *Board of Park Commissioners* v. *Common Council*, 28 Mich. 240 *et seq.*; *Spaulding* v. *Andover*, 54 N. H. 38; *Aberdeen Female Academy* v. *Mayor, etc.*, 13 S. & M. (Miss.), 645; 1 Dill. Mun. Corp. sec. 68*a; Town of Guilford* v. *Supervisors*, 13 N. Y. 149.

Although the property cannot be diverted from the use of its original beneficiary, the manner of the use is subject to legislative regulation, and the legislature may direct and control the use; and if the original beneficiary enjoy it in any way, there is neither diversion nor confiscation, which the constitution prohibits. If the legislature uses it as the beneficiary ought to have done, the

law deems it as devoted to the use of the beneficiary—and this though the particular application be made to satisfy a demand not enforcible in law or equity, but sanctioned, only by established principles of right and fair dealing. *Creighton* v. *San Francisco*, 42 Cal. 446 ; *Sinton* v. *Ashbury*, 41 Cal. 525 ; 1 Dill. Mun. Corp. secs. 68 and 75 ; *New Orleans* v. *Clark*, 95 U. S. 644.

The power of the legislature to release a debt due to a municipality is of the same kind as its power to impose a debt on a municipality. It can do neither arbitrarily or capriciously, and must do either within the scope of a proper superintending control and trusteeship. Speaking as to the latter power, this court said, in *Perry County* v. *Conway County*, 52 Ark. 430 : "The better doctrine is, that the power of the legislature to impose the debt of one county upon another, depending upon the existence of a moral obligation from the new county, or the county receiving new territory, to pay part of the old debt, the legislature may so ordain whenever it finds the moral obligation to exist." Applying that principle to this class of cases, we hold that the power of the legislature to release a municipal claim depends upon the illegal, inequitable or unjust character of the claim and the moral obligation to release it, and that whenever it finds a debt to be of that character it may exercise the power.

Whether the legislative finding of a moral obligation is subject to judicial review we need not determine ; it is certainly conclusive unless it clearly appears to be baseless. *Hoagland* v. *Sacramento*, 52 Cal. 142.

In this case the treasurer was a bailee, or *quasi* bailee, of a large fund, for which he was bound by written contract to account, with no exoneration on account of sums that might be taken from the treasurer's safe by burglars. He was required to keep the fund and was forbidden to use or lend it. That he might perform his

undertaking, the county provided a vault and safe in which the money was kept until it was taken by burglars. He had in every respect been faithful, and done all that the highest degree of prudence could demand. The money was taken from the place provided by the county for keeping it without any fault on his part, and the legislature finds that it is contrary to broad equitable principles—the ordinary principles of just and fair dealing—to compel him to stand the loss.

Such facts have been interposed as constituting a perfect defense in suits upon bonds such as he gave (1 Dill. Mun. Corp. sec. 238, note 4 ; *Halbert* v. *State*, 22 Ind. 125); and although it has been held that the defense was cut off by the terms of the bond, the fact that it has been interposed by learned counsel and considered by exalted tribunals argues that it has a foundation of fairness and justice to rest on. It would constitute a complete defense to an ordinary bailee, and the fact that it is not a perfect defense under the exacting terms of a written contract does not disprove the justness of releasing the demand.

The course of legislation in this and other States lends support to that view. As far back as 1840, and continuously since that time, acts have been passed in this State to release officers and their sureties from debts legally due by them to various counties, where the liability arose without fault of the officer ; and similar legislation abounds in other States. While such acts do not determine the question of constitutional law, they bear evidence of the public sense of justice and right. Whether the considerations that induce such acts are adequate, and whether public policy and interests are subserved by such legislation, are questions of grave doubt ; but their solution is with the legislative, and not with the judicial, department of the government.

Similar acts have been sustained by other courts. *Board of Education* v. *McLandsborough*, 38 Am. Rep.

582; *Mount* v. *State*, 46 Am. Rep. 192; Mechem on Officers, sec. 913.

The act in question was treated by counsel for appellee as a gift of municipal property, and if that was its character, it could not be sustained; but when subjected to the test of rigid scrutiny, it is seen to be, not a gift of property, but a release of a claim which, though legally due, the legislature found that it would be unjust and oppressive to collect.

In this view of the act, it comes within the scope of legislative authority. It follows that the court erred in refusing to quash the execution.

Reversed and remanded.