**TRUSTEES OF INDEPENDENT SCHOOL DIST. OF CLEBURNE v. JOHNSON COUNTY DEMOCRATIC EXECUTIVE COMMITTEE et al.**

No. 1303.

Court of Civil Appeals of Texas. Waco.

June 16, 1932.

Rehearing Denied June 23, 1932.

Walker & Baker, of Cleburne, for appellants.

Mitchell Davis and Penn J. Jackson, both of Cleburne, for appellees.

ALEXANDER, J.

The board of school trustees of the Cleburne independent school district refused permission to the Democratic Executive Committee of Johnson county to hold the 1932 Democratic primaries in the school buildings in the city of Cleburne and refused a like permit to the commissioners' court of Johnson county to hold the general election in November, 1932, in said buildings. The Democratic Executive Committee brought suit against the school board for a writ of mandamus to compel the board to allow the primary elections to be held in said buildings. The commissioners' court of Johnson county intervened and prayed for a like writ requiring the board of trustees to allow the general election to be held in said buildings. The trial was before the court without a jury and resulted in a judgment for plaintiffs and interveners as prayed. The school board appealed.

The city of Cleburne has a population of more than 10,000 inhabitants and is incorporated under a special charter under the home rule amendment. It has assumed control of its public free schools. The school district includes all of the territory within the limits of the city and some territory adjacent thereto and is an independent district. The commissioners' court of Johnson county duly entered an order defining the election precincts.

within the city and designating certain school buildings therein as the places where the elections should be held. The school board notified the Democratic Executive Committee and the commissioners' court that the board would not permit the elections to be held in the school buildings. The trial court found that the buildings designated by the commissioners' court as the places where the elections should be held, were the only public buildings within the respective election precincts and that the use of said buildings for the purpose of holding the elections will not materially disturb or interfere with the pupils or teachers in their school work and will not prevent the schools from being conducted therein in the usual and customary way.

Revised Statutes, article 2932, reads as follows: "In all cases where it is practicable so to do, all elections shall be held in some school house, fire station or other public building within the limits of the election precinct in which such election is being held. No charge shall be made for the use of such building, except that any additional expense actually incurred by the authorities in charge of such building on account of the holding of the election therein shall be repaid to them by the party who would be liable for the expenses of holding the election under the existing law. If there be no public building so available, such election may be held in some other building."

Revised Statutes, article 2772 reads, in part, as follows: "In every city or town in this State which has or may assume the exclusive control and management of public free schools within its limits, and which has or may determine that such exclusive control and management shall be in a board of trustees, * * * the title to all houses, lands and other property owned, held, set apart, or in any way dedicated to the use and benefit of the public free schools of such city or town, including property heretofore acquired as well as that which may hereafter be acquired, shall be vested in the board of trustees and their successors in office, in trust for the use and benefit of the public free schools in such city or town; and such board of trustees shall have and exercise the exclusive control and management of such school property, and shall have and exercise the exclusive possession thereof for the purpose aforesaid. * * * Such board of trustees shall constitute a body corporate, and shall have full power to protect the title, possession and use of all such property within the limits of such city or town, and may bring and maintain such suit or suits in law or in equity in any court of competent jurisdiction when necessary to recover the title or possession of any such property that may be adversely held or seized, or to prevent any trespass upon or injury to such property. * * *"

The appellants' first contention is that since under the provisions of article 2772, the trustees are given exclusive control and management of the school property, they have the exclusive right to say whether or not the buildings may be used for the purpose of holding an election therein, and that it was not the intention of the Legislature by the enactment of article 2932 to limit their authority to determine whether the buildings should be so used. Its contention is that the statute authorizes such use of a schoolhouse only when "practicable" and when such buildings are "available," and that the buildings are not "available" and it is not "practicable" to so use them when the trustees refuse their consent.

We think it clear from the provisions of article 2932 that the Legislature intended to require that all elections be held in public buildings when it was practicable to do so and to this end undertook to limit the control of school buildings by the trustees in so far as it was necessary to do so in order to accomplish such purpose. The statute giving the trustees exclusive control and management of school properties is a general one dealing with school properties in general and was enacted in 1905, while the article requiring elections to be held in schoolhouses and other public buildings is a specific one directing the use of schoolhouses for a specific purpose and was enacted in 1917. The general rule is that where two statutes affect the same subject-matter, the latter act controls the former, and this is particularly true where the latter act contains specific provisions relating to a particular subject as against a former act dealing with a subject generally. We hold that the Legislature by the enactment of article 2932 intended to limit, to the extent therein named, the exclusive control of the trustees over school properties.

We do not think that by the use of the phrase "in all cases where it is practicable so to do, all elections shall be held in some school house," etc., the Legislature meant to recognize in the board of school trustees an arbitrary authority to refuse to allow the buildings to be so used and thus render their use impracticable. "Practicable," as used in the statute, does not mean when the consent of the school board can be obtained. The term is used in its ordinary sense as feasible and means that the election shall be held in such building when it is so constructed and so located within the voting precinct as to be convenient to the voters for the purpose of holding an election and can be used without material interference with the business to which the building is generally devoted. The provision of the statute that no charge shall be made for the use of the building excludes the idea that those in charge thereof may dictate the terms on

which the building may be used, or arbitrarily refuse the use thereof if such terms are not complied with.

The appellants' next contention is that to compel the board of trustees, by statutory enactment, to allow the schoolhouses to be used for the purpose of holding an election therein, is the taking of the property of the district without due process of law and the diversion thereof to a purpose other than that to which it is dedicated.

School districts and the trustees thereof are agencies of the state created for the purpose of administering the state's system of free schools and derive their powers by delegation from the state. School property is held by the board of trustees of the district by authority of the Legislature in trust for the public within the boundaries of the district and is dedicated to educational purposes. The title to the property is in the district for the use of the public residing therein. While the Legislature may not grant to those outside of the district the right to use the school property belonging to the district nor divert such property to a purpose other than that to which it is dedicated, it may regulate and control the trustees in the use of the property for the benefit of the public having the beneficial interest therein, so long as the property is not diverted to some other purpose other than that to which it is dedicated. Love v. City of Dallas (Tex. Sup.) 40 S.W.(2d) 20, par. 14; 24 R. C. L. 581. Since the title to school property is in the school district for the benefit of the public residing therein, a use thereof by the public so residing within the district cannot be said to be a taking of the property. In the case at bar, all those who will participate in the election reside within the city and consequently reside within the school district and have a beneficial interest in the school property. It is true that those residing within the district and outside of the city limits will not be permitted to use the buildings for voting purposes, but this in itself will not render the use unlawful. It often occurs that some of those residing within the school district, and thus having a beneficial interest in its property, are not in position to use the buildings for school purposes. The holding of an election, either general or primary, is a public or governmental function, and since all those who are to use the property for the purpose of voting have a beneficial interest therein, the use of such property for such purpose by them cannot be said to be a taking of the property without compensation. If any complaint is to be made, it is because the property will be diverted to a use or purpose other than that to which it is dedicated.

Will the use of the schoolhouse for the purpose of holding an election be an unlawful diversion thereof to a purpose other than that to which it is dedicated? Schoolhouses are built and maintained primarily for the purpose of educating the children of the district, and the use thereof for any other purpose and to such an extent as to materially interfere with their use for school purposes would be a diversion of school property; but it is not every occasional, temporary, or infrequent use that constitutes a diversion. It is true that the slightest use of the property for some other purpose is to that extent an encroachment upon the trust, and if pursued far enough it would, just as the continued dropping of water wears away the stone, ultimately result in the misappropriation of the entire property. However, it is a matter of common knowledge that the schoolhouse is usually the community center, and is frequently used as a meeting place for the social uplift of the community and the perpetuation of the government, and that the board of trustees often sanctions its use for such purposes. Consequently, the courts have usually looked upon the matter from a common sense viewpoint, and as the result it is now generally recognized by the courts in Texas and elsewhere that a board of trustees under its general implied powers may lawfully permit the use of a school building for other purposes other than that of conducting a school therein, especially where it is a quasi public purpose in which the public generally is interested, provided the primary use for educational purposes is not materially interfered with. Royse Independent School District v. Reinhardt (Tex. Civ. App.) 159 S. W. 1010 (writ ref.); Martine v. South San Antonio Ind. School District, 115 Tex. 145, 277 S. W. 78; Gottlieb-Knabe Co. v. Macklin, 109 Md. 429, 71 A. 949, 31 L. R. A. (N. S.) 580, 16 Ann. Cas. 1092; 24 R. C. L. 583; Pearson v. State, 56 Ark. 148, 19 S. W. 499, 35 Am. St. Rep. 91. See note 5 A. L. R. 886.

If the board of trustees as an agency of the state who receives all of its authority from the Legislature may lawfully permit such use under its general implied power, the Legislature which creates the board and delegates such authority may itself directly grant the authority to so use the property and may direct the board to permit such use. It is fundamental that the agent can have no greater authority than the principal, and when once we concede that the board as the agency of the state may permit such use of school properties, we must admit that the state through the Legislature may grant like authority.

The elections sought to be held at the school buildings are the two Democratic primaries and the general election for the year 1932. The trial court found that the use of the buildings for the purpose of holding the elections would not prevent the schools from being conducted in the usual and customary manner nor materially interfere with the teachers or pupils. This finding is chal-

lenged by the appellants. The first primary will be held the fourth Saturday in July, and the second primary on the fourth Saturday in August. It is a matter of common knowledge that public schools are not in session on Saturday and especially during the summer months, and the evidence shows that the schools in the city of Cleburne are not an exception to this rule. The general election will be held on Tuesday in November at a time when the schools will be in session, but the evidence shows that only a few people vote at the general election. There is evidence that at least two of the buildings in question will be crowded with school children on the day the general election is to be held, and that it will be difficult to find suitable space therein for holding the election on that day without disturbing the pupils in at least one room of each building; but we cannot say that such a disturbance which occurs only once every two years would render such use of the building impracticable, or constitute an unlawful diversion of school property. The trial court's order permits the use of the buildings for the purpose of holding the elections only in such manner as not to materially disturb or interfere with the school.

We are of the opinion that the trial court properly granted the writ of mandamus compelling the board of school trustees to permit the elections to be held in the school buildings.

The judgment of the trial court is affirmed.