# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00076-CV

---

### Brazos River Authority and The State of Texas, Appellants

### v.

### City of Houston; and Sylvester Turner, in his Official Capacity as Mayor of The City of Houston, Appellees

---

### FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-004189, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

---

## DISSENTING OPINION

In 2019, the Legislature enacted H.B. 2846, directing the City of Houston to contract with the Brazos River Authority (BRA) to transfer "all of the city's ownership interests in the Allens Creek Reservoir project, including all required water right permits, along with the responsibility to construct the project," in exchange for "an amount not to exceed $23 million." Act of May 16, 2019, 86th Leg., R.S., ch. 380, § 1, 2019 Tex. Gen. Laws 688, 688. The City challenged H.B. 2846's constitutionality as a retroactive law, *see* Tex. Const. art. I, § 16; a local law, *see id.* art. III, § 56; and as a forced sale, *see id.* art. XI, § 9. The trial court granted summary judgment in the City's favor. Today, the Court affirms on the ground that H.B. 2846 is an unconstitutional retroactive law without addressing the other constitutional grounds.

People may differ in their views on the wisdom of enacting H.B. 2846 and may choose to hold their legislatures accountable by expressing their approval or disapproval at the

ballot box. But "[o]ur role is much more limited": judicial review does not license "second-guessing the political branches' policy choices" or "substituting the wisdom of [] judges for that of [] lawmakers." *Morath v. The Tex. Taxpayer & Student Fairness Coal.*, 490 S.W.3d 826, 833 (Tex. 2016). A judge's conclusion that a law "passes the threshold of constitutionality" is "not an endorsement" of that law because "[c]onstitutionality is a minimum standard—a guarantee." *Id.* at 887, 892 (Guzman, J., concurring). "The power of the courts is not unbounded," and quite simply, "we can only grade pass or fail, yes or no." *Id.* at 887 (Guzman, J., concurring).

A statute is presumed constitutional, and the party challenging the statute bears the burden to demonstrate its unconstitutionality. *Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 55 (Tex. 2014). For the following reasons, I conclude that the City did not meet its burden to overcome this presumption as to the retroactivity ground. In my opinion, the Court should sustain the State's and BRA's appellate issue that H.B. 2846 is not unconstitutionally retroactive and should then consider their other appellate issues and address the City's "forced sale" and "local law" constitutional challenges. Accordingly, I respectfully dissent.

## RETROACTIVITY

The Texas Constitution prohibits retroactive laws. *See* Tex. Const. art. I, § 16. But "[m]ere retroactivity is not sufficient to invalidate a statute"; "[m]ost statutes operate to change existing conditions, and it is not every retroactive law that is unconstitutional." *Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126, 139 (Tex. 2010) (quoting *Texas Water Rights Comm'n v. Wright*, 464 S.W.2d 642, 648 (Tex. 1971)). Although courts must "be careful to enforce the constitutional prohibition to safeguard its objectives," "courts must be mindful that statutes are not to be set aside lightly," *id.* at 146, and the Texas Supreme Court has noted that it

2

has "only upheld constitutional retroactivity challenges four times," *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 708 (Tex. 2014) (collecting cases). Nevertheless, a retroactivity analysis is "'not always a simple or mechanical test'"; one Justice has noted that "the question is a complex one." *Synatzske*, 438 S.W.3d at 61 (Lehrmann, J., dissenting) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 268 (1994)). Here, not only is the question complex but also the facts render it a particularly close call, as illustrated by this Court's considered opinion. But given the presumption of constitutionality and when confronted with these facts as interpreted in light of case precedent, it is my opinion that H.B. 2846 passes the "minimum standard" of constitutionality as to the retroactivity prohibition.

Traditionally, courts concluded that a law is unconstitutionally retroactive when its retroactive operation impairs vested rights. *Robinson*, 335 S.W.3d at 139. In 2010, the *Robinson* Court abandoned this test, concluding that "[w]hat constitutes an impairment of vested rights is too much in the eye of the beholder to serve as a test for unconstitutional retroactivity." *Id.* at 143. Instead, "courts must consider three factors in light of the prohibition's dual objectives" of "protect[ing] settled expectations that rules are to govern the play and not simply the score, and prevent[ing] the abuses of legislative power that arise when individuals or groups are singled out for special reward or punishment." *Id.* at 145. These three factors are: (1) "the nature and strength of the public interest served by the statute," (2) "the nature of the prior right impaired by the statute," and (3) "the extent of the impairment." *Id.*

*Robinson*, however, does not vitiate the need to evaluate whether the prior right is vested. Indeed, this analysis may play an important role in evaluating the second factor: the nature of the prior right. *See id.* at 148 (concluding under second factor that Robinsons' right to assert their tort claims "was real and important, and it was firmly *vested* in the Robinsons"

3

(emphasis added)); *see also City of Austin v. Whittington*, 384 S.W.3d 766, 790 (Tex. 2012) (noting post-*Robinson* that "applying procedural, remedial, or jurisdictional statutes retroactively does not violate the Constitution's prohibition on retroactive laws" because "procedural and remedial laws generally do not affect vested rights, which are property rights that the Constitution protects like any other property"). Rather, *Robinson* stands for the proposition that determining that the prior right is vested is generally not dispositive of the retroactivity issue. *See* 335 S.W.3d at 145 ("We think our cases establish that the constitutional prohibition against retroactive laws does not insulate every vested right from impairment[.]").[1]

Nevertheless, the Texas Supreme Court has concluded that determining that a right is not vested in some circumstances may be dispositive for overcoming a retroactivity challenge. For example, in *Honors Academy, Inc. v. Texas Education Agency*, the Texas

---

[1] In other constitutional contexts, Texas courts still determine whether rights are vested. *See, e.g.*, *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 15 (Tex. 2015) (considering constitutional due process challenge and noting that "[a] constitutionally protected right must be a vested right, which is 'something more than a mere expectancy based upon an anticipated continuance of an existing law'" (quoting *City of Dallas v. Trammell*, 101 S.W.2d 1009, 1014 (Tex. 1937))). Thus, *Robinson v. Crown Cork & Seal Co.* does not call into question the entire framework of "vested rights." *See generally* 335 S.W.3d 126, 136–47 (Tex. 2010). Rather, *Robinson* appears to question the "impairs vested rights" test in the retroactivity context because the case law has inconsistently labeled rights as vested for retroactivity when the real rationale driving the retroactivity holdings is something other than a concern for protecting vested rights. *Id.* at 141–42 (noting that "[i]n each of these cases, significant interests were adversely impacted by changes in the law, yet the Court held that vested rights were not impaired"; that "while due process and antiretroactivity may protect vested rights differently, *Mellinger* [*v. City of Houston*, 3 S.W. 249, 254–55 (Tex. 1887)] did not explain why a limitations bar is a vested right in one context but not in the other," and "a law that is prohibitively retroactive might not also offend due process, but not because a vested right for one is not a vested right for the other"; and that results of past "cases seem entirely reasonable in a very general sense . . . but it is not clear how they were driven by a concern for protecting vested rights"); *see Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 56 (Tex. 2014) ("We determined [in *Robinson*] that classifying a right or interest as 'vested' *in order to determine whether it has been retroactively diminished or impaired in violation of the constitution* has not yielded an efficient and predictable framework." (emphasis added)).

Supreme Court considered whether the decision to revoke an open-enrollment charter school's charter based on the retroactive use of past financial ratings was unconstitutionally retroactive. 555 S.W.3d 54, 57, 60 (Tex. 2018). The Court noted that the issue was the charter school's "right to continue operating its open-enrollment charter school, an entity owing its powers and existence to the Legislature." *Id.* at 66. Citing long-standing law that "'Municipal Corporations do not acquire vested rights against the State,'" the Court held that "a charter school's charter is not a vested property right to which the due course of law or prohibition on retrospective laws apply." *Id.* at 67–68 (quoting *Deacon v. City of Euless*, 405 S.W.2d 59, 62 (Tex. 1966)). Thus, whether a charter school's charter was a vested property right to which the retroactivity prohibition applied was dispositive of the issue without a *Robinson* analysis.

Accordingly, *Honors Academy* instructs that although *Robinson* may have changed the general analytical framework for evaluating whether a retroactive law is unconstitutional from an "impairs vested rights" test to a factor test, the nature of the prior right may, in some circumstances, categorically prevent the application of the retroactivity prohibition.[2] This bar is especially pertinent when a governmental entity or political subdivision,

---

[2] This categorical bar does not necessarily implicate standing, however. *See Wilson v. Andrews*, 10 S.W.3d 663, 669 (Tex. 1999) (noting that "we overstated our position" in *Proctor v. Andrews*, 972 S.W.2d 729, 734 (Tex. 1998), when *Proctor* Court in dicta agreed with court of appeals that city lacked standing to raise due process and equal protection challenges because municipalities do not enjoy due process rights); *Stop the Ordinances Please v. City of New Braunfels*, 306 S.W.3d 919, 929 (Tex. App.—Austin 2010, no pet.) (noting that "plaintiff is not required to allege the deprivation of a 'vested right' constituting a due-process violation to demonstrate the requisite infringement of a 'legally protected interest'"). *But see El Paso County v. El Paso Cnty. Emergency Servs. Dist. No. 1*, 622 S.W.3d 25, 41 (Tex. App.—El Paso 2020, no pet.) (concluding El Paso County Emergency Services Districts do not have standing to raise due process and equal protection challenges because "Texas law is well-settled that municipal corporations and other units of government are not vested with constitutional rights under the Texas or United States Constitutions"); *City of Irving v. Dallas/Fort Worth Int'l Airport Bd.*, 894 S.W.2d 456, 465 (Tex. App.—Fort Worth 1995, writ denied) ("[A] municipal

like a municipal corporation, asserts a retroactivity challenge, as evidenced by *Honors Academy*'s reliance on *Deacon*. *See id.* at 67 (citing *Deacon*, 405 S.W.2d at 62). In *Deacon*, landowners challenged a city's annexation ordinances as void, relying on a statute made applicable to annexation proceedings pending on March 15, 1963, notwithstanding the statute's effective date of August 23. 405 S.W.2d at 60–61. The city argued that to give retroactive effect to the statute violated the constitutional prohibition against retroactive laws. *Id.* at 62. The *Deacon* Court held:

> Section 16, Art. 1, prohibits the making of retroactive laws in so far as they destroy or impair vested rights. The Legislature cannot by retroactive legislation applicable to municipal corporations destroy or impair vested rights which persons have acquired in their relationships with the municipal corporations, but Municipal Corporations do not acquire vested rights against the State.
>
> . . .
>
> We hold that Section 16, Art. 1 of the Constitution did not prohibit the Legislature from making the relevant provisions of Art. 970a retroactive to annexation proceedings pending on March 15, 1963. It is immaterial that the City may have begun proceedings for annexation of the territory in controversy when there was no general law limitation on the size of areas which could be annexed; it acquired no vested right against the State to complete them.

*Id.* (internal citations omitted). And this Court has held that municipal corporations cannot rely on Article I provisions to invalidate laws governing them, stating:

> Municipal corporations and other government subdivisions derive their existence and powers from legislative enactments and are subject to legislative control and supremacy. Consequently, they cannot use the sword of the due-process-of-law and other provisions of Article I to invalidate the laws that govern them. . . . [But] the legislature's supremacy and control over municipalities and other agencies of the state do not extend so far as to permit the legislature to infringe

corporation which exists under the authority of a state has no standing to raise a challenge under the Contract Clause of either the Federal or State Constitution," and "a municipality's sovereignty is dependent upon that of the state.").

> upon rights given municipalities and other subdivisions or agencies of the State, *as such*, in some express constitutional provision outside Article I.

*Texas Workers' Comp. Comm'n v. City of Bridge City*, 900 S.W.2d 411, 414 (Tex. App.—Austin 1995, writ denied); *see Honors Acad.*, 555 S.W.3d at 68 (citing *City of Bridge City*, 900 S.W.2d at 414, with approval and noting in citation parenthetical *City of Bridge City*'s conclusion "that governmental entities cannot use Article I rights to invalidate the laws that govern them"); *Proctor v. Andrews*, 972 S.W.2d 729, 734 (Tex. 1998) ("Courts have recognized that a municipal corporation or other government subdivision can bring a constitutional challenge based on a provision outside the bill of rights and its guarantees to 'persons' and 'citizens.'" (citing *City of Bridge City*, 900 S.W.2d at 414)); *El Paso County v. El Paso Cnty. Emergency Servs. Dist. No. 1*, 622 S.W.3d 25, 41 (Tex. App.—El Paso 2020, no pet.) ("A unit of government may assert constitutional violations outside of the bill of rights where it is 'charged with implementing a statute' that it believes violates the Texas or United States Constitution." (quoting *Proctor*, 972 S.W.2d at 734)).[3]

---

[3] Other authorities have addressed related issues. *See, e.g.*, *Tooke v. City of Mexia*, 197 S.W.3d 325, 345 (Tex. 2006) ("A governmental entity cannot complain of a retroactive waiver of immunity, since all governmental immunity derives from the State, and a governmental entity acquires no vested rights against the State." (citing *Deacon v. City of Euless*, 405 S.W.2d 59, 62 (Tex. 1966))); *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 72 (Tex. 2000) ("The City, however, derives its existence and powers from legislative enactments and is subject to legislative control. Consequently, the Legislature has the power to require the City to submit to inconvenient venue, and the City's due process challenge of this application of the venue statute fails."); *Proctor*, 972 S.W.2d at 734 (agreeing with court of appeals that "municipalities do not enjoy due process rights"); *White Deer Indep. Sch. Dist. v. Martin*, 596 S.W.3d 855, 864 (Tex. App.—Amarillo 2019, pet. denied) ("Because statutes are unconstitutional only when they operate retroactively to 'destroy or impair' vested rights, and the District, as a governmental entity, has no vested rights against the State, we conclude that the District's interest in tax revenues is not a vested right to which the prohibition on retroactive laws applies." (citing *Deacon*, 405 S.W.2d at 62)); *see also Toledo City Sch. Dist. Bd. of Educ. v. State Bd. of Educ.*, 56 N.E.3d 950, 960 (Oh. 2016) (collecting and comparing decisions by "our sister

These authorities, however, do not prevent municipal corporations from relying on the retroactivity prohibition in all situations; it depends on the nature of the prior right asserted by the municipal corporation. In *Milam County v. Bateman*—which addressed counties as political subdivisions—the Texas Supreme Court held that although "the political rights and privileges delegated to counties are not within the constitutional prohibitions against retroactive laws and those which impair vested rights," a "different principle, however, obtains as regards the rights of counties to property which they may acquire" and "[s]uch rights, as a general rule, are protected by the same constitutional guarantees which shield the property of individuals." 54 Tex. 153, 165–66 (1880); *see Texas Antiquities Comm. v. Dallas Cnty. Cmty. Coll. Dist.*, 554 S.W.2d 924, 930 (Tex. 1977) (plurality op.) (noting that in *Milam County* "[t]he legislature's extensive control over its subdivisions' political rights was recognized, but it was held that a subdivision's property rights, 'are protected by the same constitutional guarantees which shield the property of individuals'" (quoting *Milam County*, 54 Tex. at 166)). The rationale underlying this distinction appears to rest on the fact that when a political subdivision of the State acquires and holds property devoted to public use,[4] it is generally acting as trustee for the local public:

> The corporate entity is a legislative creation, and its powers may be restrained, its functions changed, or its existence destroyed at the will of the legislature; but, in

---

supreme courts" "examin[ing] whether the prohibition on retroactive laws extends to political subdivisions").

[4] The City specifically asserts that its alleged prior right impacted by H.B. 2846 will be devoted to public use, stating that "H.B. 2846 requires an unconstitutional forced sale of specific municipal assets Houston owns and will devote to exclusive public use" and that "[t]here is no dispute that, as a regional WWP, Houston's[] intended use of the Reservoir was as a municipal and regional water supply" and citing Tex. Civ. Prac. & Rem. Code § 101.0215(11), (19), (32) (identifying as governmental functions "waterworks," "dams and reservoirs," and "water and sewer service"); *Long Island Water-Supply Co. v. City of Brooklyn*, 166 U.S. 685, 689 (1897) ("[T]hat the supply of water to a city is a public purpose cannot be doubted[.]").

8

so far as it has acquired and holds property, it is but a trustee for the local public; and, although its powers be withdrawn or its existence ended, the property which survives it belongs to the same public, and must be, in some way, applied to its use. It has no contract right to exist as a corporation, but the public that it represents has a vested right in the municipal property acquired for its benefit, and is entitled to demand that such property be applied to its uses.

*Love v. City of Dallas*, 40 S.W.2d 20, 27 (Tex. 1931) (quoting *Pearson v. State*, 19 S.W. 499, 500 (Ark. 1892), and noting that *Pearson* "correctly stated the rule as to legislative power over . . . other municipal properties" and "[n]ot only is this a correct statement of the rule, but it is the one accepted by the best writers and courts of the country");[5] *see Texas Antiquities Comm.*, 554 S.W.2d at 930–31 (discussing *Milam County* and *Love*). Thus, consistent with the rationale enunciated in *Love*, when a municipal corporation acquires and holds property for the benefit of the local public, the local public has acquired a vested right in that property by virtue of its relationship with the municipal corporation, and challenged legislation impairing that right would be subject to the *Robinson* factor test to determine whether the law is unconstitutionally retroactive. *See Deacon*, 405 S.W.2d at 62 ("The Legislature cannot by retroactive legislation applicable to municipal corporations destroy or impair vested rights which persons have acquired in their relationships with the municipal corporations[.]"); *see also Robinson*, 335 S.W.3d at 145–46 (replacing "impairs vested rights" test with factor test).

---

[5] *Love v. City of Dallas* concerned school districts' property rights. 40 S.W.2d 20, 26 (Tex. 1931). However, the *Love* Court noted, "School districts are local public corporations of the same general character as municipal corporations" and "are defined as quasi-municipal corporations"; "[c]ities and towns and municipal corporations are of the same general nature as quasi-municipal corporations, in so far as here involved, and the right of the Legislature to create, abolish, enlarge, or restrict them in their territory or powers is, unless restrained by special constitutional provisions, similar to the authority of the Legislature over quasi-municipal corporations"; and "[t]his opinion necessarily deals with both types of public corporations, and it is not believed that the rules of law as to school property rights are different." *Id.* at 26–27.

9

From this case law, I derive the following principles. For individuals and private entities, the Texas Constitution's prohibition against retroactive laws "broadly protects rights, although they may not be rights in property." *Wright*, 464 S.W.2d at 648. For political subdivisions like municipal corporations, on the other hand, the constitutional prohibition against retroactive laws protects a narrower class of rights against the State.[6] Reading *Honors Academy*,

---

[6] Although the cited cases concern different types of political subdivisions—e.g., cities in *Deacon* or counties in *Milam County*—in my opinion the principles that I derive from the case law generally cover these entities for the purpose of a retroactivity analysis, although the specific application of the principles may have different nuances depending on what type of entity is asserting the constitutional challenge. Here, it is undisputed that the City is a home-rule municipality. "Municipalities are creatures of law that are 'created as political subdivisions of the state . . . for the exercise of such powers as are conferred upon them. . . . They represent no sovereignty distinct from the state and possess only such powers and privileges as have been expressly or impliedly conferred upon them.'" *Town of Lakewood Village v. Bizios*, 493 S.W.3d 527, 530 (Tex. 2016) (quoting *Payne v. Massey*, 196 S.W.2d 493, 495 (Tex. 1946)). "Home-rule municipalities 'derive their powers from the Texas Constitution' and 'possess the full power of self government and look to the Legislature not for grants of power, but only for limitations on their power.'" *Id.* at 531 (quoting *In re Sanchez*, 81 S.W.3d 794, 796 (Tex. 2002) (orig. proceeding)); *see also* Tex. Const. art. XI, § 5. Although some authorities I cite refer to political subdivisions as legislative creations, *see, e.g.*, *Love*, 40 S.W.2d at 27; *Texas Workers' Comp. Comm'n v. City of Bridge City*, 900 S.W.2d 411, 414 (Tex. App.—Austin 1995, writ denied), this does not accurately refer to "home-rule municipalities." Nevertheless, I see no reason that these general principles would not also apply to home-rule municipalities as political subdivisions. *See, e.g.*, *City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007) (describing home-rule cities as political subdivisions by noting that "[p]olitical subdivisions in Texas have long enjoyed immunity from suit when performing governmental functions" and that "high standard" for waiver of immunity "is especially true for home-rule cities" because "[s]uch cities derive their power from the Texas Constitution, not the Legislature"); *Guaranty Petrol. Corp. v. Armstrong*, 609 S.W.2d 529, 531 (Tex. 1980) ("A political subdivision has jurisdiction over a portion of the State; a department, board or agency of the State exercises its jurisdiction throughout the State. Members of the governing body of a political subdivision are elected in local elections or are appointed by locally elected officials; those who govern departments, boards or agencies of the State are elected in statewide elections or are appointed by State officials. Political subdivisions have the power to assess and collect taxes; departments, boards and agencies do not have that power."); *Willis v. Potts*, 377 S.W.2d 622, 625 (Tex. 1964) ("The Legislature from time to time has passed laws controlling such Home Rule Cities. Such Home Rule Cities exist solely by virtue of the State Constitution and legislative enactments. These cities are therefore political and governmental subdivisions under this state."); *City of Goose Creek v. Hunnicutt*, 39 S.W.2d 617, 618 (Tex. [Comm'n App.] 1931) ("It is true that legislative,

*Deacon*, *Milam County*, *Love*, and the other related cases discussed above together, I conclude that when a municipal corporation asserts a prior right against the State to challenge a retroactive law as unconstitutional, the municipal corporation generally needs to demonstrate that the nature of its prior right against the State is a vested property right as a threshold requirement to trigger the *Robinson* factor test.

With this framework in mind, I turn to the nature of the prior right asserted by the City.[7] The City argues that "appropriated water rights are ordinarily considered to be vested rights" and that "the 'prior right' impaired by [H.B. 2846] is Houston's right to 70% of water from the Reservoir." The State, on the other hand, argues that "[t]he most Houston can claim is an unperfected right to use water that it has never exercised," *see* Tex. Water Code § 11.026 ("No right to appropriate water is perfected unless the water has been beneficially used . . . ."); that "[t]he power that authorizes or proposes to give may always revoke before an interest is perfected in the done" (quoting *De Cordova v. City of Galveston*, 4 Tex. 470, 479 (1849) (Hemphill, C.J.)); and thus that "the State is free to take away Houston's unperfected, or unvested, water rights."

---

power to incorporate a home rule city is, by constitutional provision, delegated to the inhabitants of the territory affected; nevertheless a city so incorporated is a political subdivision of the state for governmental purposes."), *overruled on other grounds by De Shazo v. Webb*, 113 S.W.2d 519 (Tex. 1938).

[7] BRA and the State raise the appellate issue of whether the City had a vested right and challenge the City's assertions to possessing a vested property right against the State. Although they do not expressly address what rights the City, as a municipal corporation, can acquire as vested rights against the State for the purpose of a retroactivity analysis, a court performing a *Robinson* analysis must consider "the nature of the prior right impaired," including whether the City met its burden to overcome the presumption of constitutionality by demonstrating that the prior right it asserts is a vested property right against the State.

11

The water use permit at issue here, Permit 2925B, is a "grant[] to the permittees of usufructuary rights to the State's water upon the implied condition subsequent that the waters would be beneficially used." *See Wright*, 464 S.W.2d at 649; *see also* Tex. Water Code § 11.0235(a) ("The waters of the state are held in trust for the public, and the right to use state water may be appropriated only as expressly authorized by law."); *In re Adjudication of the Water Rights of Upper Guadalupe Segment of Guadalupe River Basin*, 642 S.W.2d 438, 444 (Tex. 1982) (noting that "[a] usufruct has been defined as the right to use, enjoy and receive the profits of property that belongs to another"); *Ware v. Texas Comm'n on Envtl. Quality*, No. 03-14-00416-CV, 2017 WL 875307, at *1 (Tex. App.—Austin Mar. 3, 2017, no pet.) (mem. op.) ("Under Chapter 11, the waters of Texas rivers, streams, and lakes (among other sources) are declared to be the property of the State (i.e., 'state water') held in trust for the public, but the right to use state water (as opposed to corporeal ownership) may be acquired by appropriation in the manner and for the purposes the chapter prescribes." (internal footnotes and citations omitted)). No doubt, "a water right, when acquired and perfected, constituted a vested right to the use of the water appropriated." *Wright*, 464 S.W.2d at 647 (collecting cases); *see In re Adjudication*, 642 S.W.2d at 445 ("Appropriated water rights, like riparian rights, are vested."); *Clark v. Briscoe Irrigation Co.*, 200 S.W.2d 674, 679 (Tex. App.—Austin 1947, writ dism'd) ("Nor is there any question but that a water right, when acquired and perfected either under the posting or permit system, constitutes a vested interest in or title to the use of the water thereby appropriated."). But here, the water has not been beneficially used or appropriated, and the City's right to appropriate water has not been perfected in the almost 20 years since the permit had been initially issued. *See* Tex. Water Code § 11.026.

12

In *Motl v. Boyd*, the Texas Supreme Court explained and described the nature of a permit right prior to appropriation. 286 S.W. 458, 475 (Tex. 1926), *disapproved of on other grounds by Valmont Plantations v. State*, 355 S.W.2d 502 (Tex. 1962). The *Motl* Court stated: "The instrument issued by the board is called by the statute in various sections a permit; that is, a permit to appropriate water. Permit is synonymous with leave or license, and means no more than that the party has the license of the state *to become* an appropriator of water upon statutory conditions." *Id.* (emphasis added). Referencing a predecessor statute of Section 11.026 that similarly required beneficial use before appropriation rights are considered perfected, the *Motl* Court continued: "The right to appropriate does not mature until the permit holder actually appropriates it in the manner and form prescribed by the statute. . . . On the whole, we think the permit is just what the name signifies—merely a license to become an appropriator of public water." *Id.* This Court, following and expounding on *Motl*, explained: "Thus, a permit is no more than evidence of a right to acquire another right, the right to use whatever quantity of water the holder may require for a beneficial use." *Lower Colo. River Auth. v. Texas Dep't of Water Res.*, 638 S.W.2d 557, 563 (Tex. App.—Austin 1982) (citing *Motl*, 286 S.W. at 475), *rev'd on other grounds*, 689 S.W.2d 873 (Tex. 1984); *see* 73 Tex. Jur. 3d Water § 113 ("A permit is, however, merely a license to become an appropriator of public water on statutory conditions. The right to appropriate does not mature until the permit holder actually appropriates water in the manner and form prescribed by the statute." (citing *Motl*, 286 S.W. at 475)). Accordingly, not only has the City not perfected the usufructuary water right described in Permit 2925B, but also it has not even acquired that right. *See* Tex. Water Code §§ 11.002(5) (defining "[w]ater right" to mean "a right acquired under the laws of this state to impound, divert, or use state water"), .022 ("The right to the use of state water may be acquired *by appropriation* in the manner and for

13

the purposes provided in this chapter." (emphasis added)). By acquiring the permit to use the water, the City has acquired only the "right to acquire [the usufructuary] right" in the future through beneficial use. *See Lower Colo. River Auth.*, 638 S.W.2d at 563.

Consistent with these authorities, I cannot conclude that the City's right to acquire in the future a water use right upon appropriation constitutes a vested property right that would satisfy the threshold requirement to trigger a *Robinson* analysis for a municipal corporation. The City does not cite any case authorities that would support its position that an unperfected water right granted in a permit is a vested property right, and general principles of Texas law indicate the contrary. *See, e.g.*, *De Cordova*, 4 Tex. at 479 (Hemphill, C.J.) ("The power that authorizes or proposes to give may always revoke before an interest is perfected in the done.").

The City argues that Permit 2925B is exempt from permit cancellation under Section 11.173(b), presumably implying that this statutory protection from cancellation changes the nature of the right granted in the permit to a vested right. *See* Tex. Water Code § 11.173(b). But Section 11.173(b) exempts a permit "from cancellation under Subsection (a)." *Id.* And Section 11.173(a) merely authorizes the cancellation of a permit based on 10 years of nonuse "during the 10-year period immediately preceding the cancellation proceedings authorized by this subchapter." *Id.* § 11.173(a). If the condition is satisfied, the permit "is subject to cancellation in whole or in part, as provided by this subchapter, to the extent of the 10 years nonuse." *Id.*; *see id.* § 11.172 ("A permit . . . is subject to cancellation in whole or part for 10 years nonuse as provided by this subchapter."). But Subchapter E provides the procedural mechanism for cancelling a permit for nonuse and is limited to authorizing the cancellation for nonuse; it does not generally protect an unperfected water right from cancellation. *See generally id.* §§ 11.171–.186 ("Subchapter E. Cancellation of Permits, Certified Filings, and Certificates of

14

Adjudication for Nonuse"). In other words, Section 11.173(b) does not create a settled expectation that a specified type of permit will not be cancelled at all such that the right granted in the permit is vested; rather, to the extent Section 11.173(b) creates settled expectations, the expectation is that the permit will not be cancelled for nonuse under Subchapter E.

The City may be correct that Chapter 11 does not authorize the Commission to cancel its permit on the ground that the right has not been perfected. *See id.* § 11.177(a) (authorizing commission to cancel permit after hearing and nonuse finding). But the Legislature's power to enact, amend, or repeal state laws is "generally limited only by federal or state constitutional provisions or federal law"—not other legislative acts—and "as a general rule, one 'legislature cannot prevent future legislatures from amending or repealing a statute.'"[8] *Graphic Packaging Corp. v. Hegar*, 538 S.W.3d 89, 104 (Tex. 2017) (quoting *Central Power & Light Co. v. Public Util. Comm'n*, 649 S.W.2d 287, 289 (Tex. 1983)). Thus, the lack of an express statutory provision authorizing *the Commission* to cancel a permit granting unperfected water rights does not prevent *the Legislature* from enacting a law that effectively cancels the City's rights under the permit by requiring them to be contractually transferred to BRA, so long as the law satisfies constitutional and federal law. And the City is presumed to know this law. *Philadelphia Indem. Ins. v. White*, 490 S.W.3d 468, 483 (Tex. 2016) ("[P]arties are presumed to know the law[.]" (quoting *Texas Emp'rs Ins. Ass'n v. Tabor*, 283 S.W. 779, 780 (Tex. Comm'n App. 1926))). Especially given the unique circumstances of the Legislature's involvement with the Allens Creek Reservoir project for over 20 years, I cannot conclude that the City had a

_____

[8] H.B. 2846 amended S.B. 1593 by adding an additional section directing the City to contract with BRA. *See* Act of May 22, 1999, 76th Leg., R.S., ch. 1291, § 1.01, 1999 Tex. Gen. Laws 4426, *amended by* Act of May 16, 2019, 86th Leg., R.S., ch. 380, § 1, 2019 Tex. Gen. Laws 688, 688.

legitimate claim of entitlement that rose to the level of a vested property right against the State. Accordingly, I would hold that the City's asserted prior right is "not a vested property right to which the . . . prohibition on retrospective laws appl[ies]." *Cf. Honors Academy*, 555 S.W.3d at 68.

## CONCLUSION

H.B. 2846 and the circumstances leading up to it are, no doubt, novel exercises of legislative authority, and the Legislature's policy of enacting H.B. 2846 may be reasonably questioned. But our role as judges is to evaluate the constitutionality of a law, not its policy. It is my opinion that, as written and interpreted by precedential authorities, the retroactivity prohibition relied on by the City does not prohibit H.B. 2846. I therefore respectfully dissent.

 

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Triana, and Smith

Filed: June 30, 2021

16